**PEOPLE ex rel. HUMMEL v. DAVY, Justice of Supreme Court, et al.**

(Supreme Court, Appellate Division, First Department. June 23, 1905.)

PROHIBITION—INDICTMENT—INVALIDITY—REMEDY—JURISDICTION.

That one indicted for a crime was compelled to appear as a witness before the grand jury and give evidence concerning the transaction for which he was indicted does not deprive the court of jurisdiction to try the accused, so as to justify the issuance of a writ of prohibition restraining it from so doing.

O'Brien, P. J., and Ingraham, J., dissenting.

Prohibition by the people, on relation of Abraham H. Hummel, against John M. Davy, as justice of the Supreme Court assigned to hold Trial Term, Part 1, Criminal Branch, of the New York Supreme Court, and others, to restrain the defendant named from trying the relator under certain indictments. Writ denied.

Argued before O'BRIEN, P. J., and McLAUGHLIN, PATTERSON, INGRAHAM, and LAUGHLIN, JJ.

De Lancey Nicoll, for relator.
William Travers Jerome, Dist. Atty., for respondents.

McLAUGHLIN, J. In February, 1904, Charles F. Dodge was indicted by the grand jury of the county of New York for the crime of perjury, committed in an affidavit used on a motion to procure an order setting aside a decree of divorce obtained against him by his wife. In January, 1905, the grand jury had under investigation a charge of conspiracy by Dodge et al., in unlawfully procuring the dissolution of this decree and the annulment of the wife's subsequent marriage to Charles W. Morse, as well as the subornation of Dodge to commit the perjury for which he stood indicted. The

relator is an attorney and counselor at law of this state, and as such had appeared for Dodge, and while these investigations were in progress was summoned to appear before the grand jury as a witness, and bring with him certain books and papers relating to the business of himself and of his law firm. Before being sworn he presented to the foreman of the grand jury a paper which set forth the fact that he was an attorney and counselor at law, and that he refused to produce the books and papers called for by the subpoena, upon the ground that they would disclose confidential communications between himself and his clients. As a further reason for such refusal, the papers stated that the relator had heard that certain members of the bar were likely to be proceeded against by indictment on account of proceedings taken to set aside a certain decree of divorce, with which he was professionally connected, and that he did not know but that the present proceeding might be directed against himself, and that the production of the books and papers might tend to incriminate him, concerning all of which he had taken the advice of counsel. After the foreman had read his paper, and before the oath was administered, the relator asked to be informed of the nature of the proceeding and the purpose of the investigation, in order that he might consult counsel and obtain their opinion as to whether or not the grand jury had any lawful right to proceed, or whether any matter was legally before it, on which witnesses might be sworn and examined. This was refused, and the relator was sworn as a witness in the case against Charles F. Dodge et al. The relator declined to answer many questions on the ground that they tended to disclose privileged communications between himself and client, and many others on the ground that the answers might tend to incriminate him, but he finally did testify that he was retained by Dodge; had received a counsel fee from some one; that a client of his had paid the expenses of defending Dodge in extradition proceedings taken in the state of Texas, of which his firm had charge; that most likely he read an affidavit prepared in his office, sworn to by Dodge, to the effect that Dodge had supplied the evidence himself on which the decree of divorce had been granted to his wife; that he knew Charles W. Morse; and that his office kept books which showed the receipts and disbursements of moneys, which were regularly destroyed at the end of each year. Early in the examination, and before the relator had testified to anything, except that he knew Dodge and had been retained by him as his attorney, he was informed specifically that the proceeding was "to ascertain what persons, if any, were privy to the commission of the crime of perjury committed by Charles F. Dodge, and what persons, if any, had conspired to deceive the Supreme Court and subvert the administration of the law"; and in response to an inquiry the relator replied that he was fully informed by this statement as to the object of this investigation. Before and after the relator appeared before the grand jury, several other witnesses were subpoenaed, appeared, and gave testimony bearing upon the subject-matter under investigation; and, before any indictment was found, the jury were instructed by the

learned district attorney that, if any indictment was found against the relator, it must be based upon the testimony of witnesses other than himself. Three indictments were found against him. One charged him and others with conspiracy, and the other two charged him and another with subornation of perjury. They were consolidated in a motion to set them aside on the ground that they were void because the grand jury had no jurisdiction to institute the investigation of which they were the result, and because the relator had been compelled to be a witness against himself, in violation of his constitutional rights. This motion was denied, and thereupon the relator applied for a writ of prohibition to restrain a justice of the Supreme Court assigned to hold Trial Term, Part 1, Criminal Branch, of the Supreme Court, in which the trial had been or was about to be moved, and the people from trying him under the indictments; an alternative writ being granted pending the determination of the application.

I think the writ should be refused. So far as appears, the grand jury was regularly constituted. The jurisdiction of a grand jury to inquire into the commission of crime is not dependent upon a preliminary investigation before a magistrate. Section 252 of the Code of Criminal Procedure declares that a grand jury have the power and that it is their duty to inquire into all crimes committed or triable in the county, and to present them to the court. Nor is the jurisdiction dependent upon the district attorney calling the matter to their attention, for, if any member knows, or has reason to believe that a crime has been committed within the county, it is his duty to declare it to his fellow jurors, who are thereupon required to investigate the same. Section 259, Code Cr. Proc. And it is made the duty of the district attorney to issue subpoenas for such witnesses, other than those which he has produced before them, as they may direct. Section 609, Code Cr. Proc. It has long been the law that a grand jury have full power to make an investigation, and to present, by indictment, any person charged with crime, whether there has been a preliminary arrest or examination or not. People v. Hyler, 2 Parker Cr. R. 566. The grand jury had jurisdiction to find the indictment, and it is regular and valid upon its face.

The only question, then, which remains to be considered, is whether the permitting or compelling of the relator to appear before the grand jury makes it a nullity. If such fact makes the indictment irregular or defective only, it cannot be claimed that a writ of prohibition would lie to restrain further proceedings under it. A writ of prohibition only lies where there is a want of jurisdiction or where a court or judge or other tribunal is proceeding in excess of the jurisdiction conferred. This we held in the recent case of People ex rel. Patrick v. Fitzgerald, 73 App. Div. 339, 76 N. Y. Supp. 865. In that case the court was careful to point out the restricted meaning of the phrase "contrary to the general laws of the land," found in some text-books and older English cases, and to say it meant nothing more than an excessive jurisdiction, and that the office of a writ of prohibition was not to regulate erroneous rulings

of a tribunal having jurisdiction of an action or proceeding, and that, where jurisdiction exists, errors of law or procedure must be corrected by such appeal or other review as the law affords. The remedy by writ of prohibition was once provided by common law against the encroachment of jurisdiction. The statute does not change the character of the writ, or permit any question, except of jurisdiction, to be tried in proceedings inaugurated by it. Thomson v. Tracy, 60 N. Y. 31, at page 37.

The jurisdiction of the court in which the motion to quash was made is not questioned. Both the court in which the indictment was found and that in which the motion to quash was denied having jurisdiction of the relator, and of the subject-matter for which he stands indicted, it seems to me clear that a writ of prohibition does not lie, unless the fact that the relator was permitted or compelled to appear and testify before the grand jury which found the indictment deprived the court of the jurisdiction which it theretofore possessed. The question now before us is not whether the motion to set aside the indictment should have been granted, but is simply whether the fact that the relator gave testimony before the grand jury with respect to the matter for which he was subsequently indicted by that body makes the indictment—otherwise good—a nullity. It cannot be that his testimony has such effect, because whether the indictment be bad or not depends upon what the relator was compelled to disclose. Merely being compelled to appear in pursuance of a subpœna and be sworn is no violation of a constitutional privilege, for the witness must take the oath, so that his assertion of privilege shall be made under the sanction of an oath. United States v. Kimball (C. C.) 117 Fed. 156. He may testify, exculpating himself, or the testimony which he gives may have no bearing upon the alleged crime, or to himself, in which case his rights have not been violated, nor a subsequently found indictment affected. United States v. Kimball, supra; People v. Lauder, 82 Mich. 109, 46 N. W. 956; Boone v. People, 148 Ill. 440, 36 N. E. 99; People v. King, 28 Cal. 265.

In People v. King, supra, the court said:

"So far as the motion was based upon the ground that the defendant had testified against himself before the grand jury is concerned, it is only necessary to say that we know of no rule of law which made it illegal for him to testify if he felt inclined to do so, nor do we know of any rule of law which makes the voluntary testimony of any defendant before the grand jury a ground for setting aside the indictment."

It is only where a person has been compelled to give testimony damaging to himself that the indictment is rendered bad and the court is required to set it aside. People v. Singer, 18 Abb. N. C. 96; People v. Haines (Gen. Sess.) 1 N. Y. Supp. 55.

People v. Haines, supra, which is relied upon by the relator, recognizes that the same rule applies to investigations by a grand jury that prevails before committing magistrates or upon coroners' inquests. Where a witness is subpœnaed and testifies before a coroner, he may decline to testify to anything that may tend to incriminate him; and, if he does not claim his privilege, the testi-

mony which he gives may be used against him on a subsequent trial for the crime then under investigation. People ex rel. v. Molineux, 168 N. Y. 333, 61 N. E. 286, 62 L. R. A. 193.

It seems to me, therefore, that the propriety of setting aside an indictment because the person indicted has testified before the grand jury which found the indictment depends upon whether he has been compelled to testify against his will to facts which tend to incriminate him. Whether the witness' constitutional rights have been violated is a question of fact, and the determination of that fact by an inferior court may be finally decided to be improper or erroneous. In no sense does an erroneous determination deprive the court of jurisdiction, or call for the issuance of a writ of prohibition restraining a subsequent trial. If the trial shall result in the conviction of the relator, the validity of the order refusing to dismiss the indictment may be determined on an appeal from the judgment of conviction, and the relator's rights thus preserved. Code Cr. Proc. § 517.

In view of the fact that the question of whether or not that order was proper may possibly come before this court, I refrain from discussing whether or not the relator was compelled to testify to any facts which tend to incriminate him. It is sufficient for the determination of the question now before us to say that nothing appears in the record which justifies the issuance of the writ of prohibition prayed for.

If I am correct in this, then it follows that the alternative writ should be vacated, and the peremptory writ refused.

PATTERSON, J. I am not at difference with Mr. Justice IN-GRAHAM in the abstract views he has expressed respecting the protection of a person accused of crime in the enjoyment of his constitutional right, but I cannot assent to the proposition that such protection is to be afforded in the concrete case before us through the instrumentality of a writ of prohibition. That writ lies to restrain the action of a court without jurisdiction, or where there is an excessive exercise of jurisdiction (People ex rel. Patrick v. Fitzgerald, 73 App. Div. 344, 76 N. Y. Supp. 865), or possibly where a person arraigned upon a criminal charge has no other remedy in the assertion of his constitutional right than a resort to it. In the present case the ground upon which the alternative writ is sought to be sustained is that the indictment against the defendant Hummel is void, and that the court below is proceeding to try that defendant upon such void indictment. An indictment is a record of a court, and it imports absolute verity until properly impeached. People v. Hulbut, 4 Denio, 133, 47 Am. Dec. 244. Here the indictment is regular on its face, and in form as required by law. It is attacked on extrinsic grounds. It is true that the defendant's name is indorsed on the indictment as a witness, but that does not of itself indicate invalidity. There are two methods of impeaching an indictment—one by demurrer, where the grounds for attacking it appear upon its face; and the other by motion to quash, where the invalidity must be shown by extrinsic facts or

circumstances. There is no method by which the proceedings of a grand jury can be reviewed, except by motion to dismiss an indictment or in arrest of judgment. People v. Dimick, 107 N. Y. 15, 14 N. E. 178. The defendant Hummel has availed himself of the right to move to dismiss the indictment against him on the ground that he was compelled to appear before the grand jury and be sworn as a witness and to give testimony, in violation of the Constitution of the state, which provides that no man shall be compelled to be a witness against himself. The motion was denied. What took place before the grand jury was made known to the court on the motion thus made to quash the indictment, and it appears in the record that the justice of the Supreme Court before whom the motion was made examined the testimony given by the defendant Hummel before the grand jury, and reached the conclusion that such testimony was not obtained by compulsion, or in violation of the constitutional provision protecting a person from being compelled in a criminal case to be a witness against himself. There can be no doubt of the jurisdiction of the Supreme Court to entertain, pass upon, and decide that motion. Therefore that court was not acting without jurisdiction, nor did it exceed its jurisdiction. Thus far, then, we have an indictment which imports verity; a motion made to quash it regularly brought before the court, duly considered, and definitely decided.

It is said, however, that no remedy by way of motion existed, because of the provision of section 313 of the Code of Criminal Procedure, which does not provide for a motion to quash an indictment in such a case as this. It must be conceded that the section does not so provide. It says in express words that an indictment must be set aside by the court in which the defendant is arraigned, and upon his motion, in either of the following cases, but in no other: (1) When it is not found, indorsed, and presented as prescribed in sections 268 and 272; (2) when a person has been permitted to be present during the session of the grand jury while the charge embraced in the indictment was under consideration. If discussion of the subject ended there, there might be ground for applying for the extraordinary writ of prohibition, but it does not end there. The matter has received full and careful consideration by the Court of Appeals, and it has been decided that, notwithstanding the exclusive provision of section 313 of the Code of Criminal Procedure, a motion to quash an indictment will be entertained, and must be heard, where it is claimed that a party has been deprived of his constitutional right by a grand jury. People v. Glen, 173 N. Y. 400, 66 N. E. 112. In that case, reviewing proceedings of a grand jury, so far as pertinent, the court said:

"Our courts have always asserted and exercised the power to set aside indictments whenever it has been made to appear that they have been found without evidence or upon illegal or incompetent testimony. [Citing cases.] This power is based upon the inherent right and duty of the courts to protect the citizen in his constitutional prerogatives, and to prevent oppression or persecution. It is a power which the Legislature can neither curtail nor abolish, and, to the extent that legislative enactments are designed to effect either of these ends, they are unconstitutional. The broad application of these prin-

ciples to the case at bar is simple. So far as said section 313 is intended to regulate only matters of procedure which involve no constitutional rights, it is valid and must be obeyed by the courts; but to the extent that it may destroy, curtail, affect, or ignore the constitutional right of a defendant, it has no force and is void."

Thus the court superadded to the provisions of section 313 another ground for moving to quash an indictment, namely, that the defendant had been deprived of his constitutional right. There is the remedy afforded. In the present case, a motion being before the court and having been passed upon by it, a determination upon the subject has been pronounced. It was made by a court of competent jurisdiction after hearing evidence relating to the matter, and it passed upon the facts alleged by the defendant in impeachment of the indictment. Thus we have a judicial declaration that the indictment is valid, and not void. The only method by which that decision can be reviewed is by appeal. The writ of prohibition is not one of error or review, and the defendant is not without a remedy, for it is provided by section 517 of the Code of Criminal Procedure that any actual decision of the court or intermediate order forming part of the judgment roll may be reviewed on appeal from a final judgment, and such has been the practice. In the Glen Case, above referred to, the question of the defendant therein being deprived of his constitutional right before the grand jury, which had been raised by motion in the trial court, was brought up on appeal from a final judgment, thus showing what the practice is.

In my opinion, therefore, the defendant is not entitled to a writ of prohibition, and the proceedings should be dismissed.

LAUGHLIN, J. I am of opinion that for the reasons assigned by Mr. Justice INGRAHAM the indictment should have been dismissed, but I do not agree that a trial thereon may be perpetually stayed by a writ of prohibition. Nor do I assent to the view that the denial of the motion is not appealable before the trial upon the indictment. It is to be borne in mind that the motion is not upon a statutory ground prescribed by the Code of Criminal Procedure, but upon the ground that the constitutional rights of the defendant have been violated. People v. Glen, 173 N. Y. 395, 66 N. E. 112. Where extrinsic proof of such violation of rights is made, I think the defendant has a right of appeal before trial through to the Court of Appeals, at least, if not to the Supreme Court of the United States. If the indictment were void upon its face, then the writ of prohibition would be an appropriate remedy, but the difficulty in the present case is that on its face the indictment appears to be regular and valid. The mere fact that the name of the defendant is indorsed upon it as a witness does not invalidate it, because, for aught that appears, he may have become a witness at his own instance, or have waived his constitutional rights. We have therefore an indictment regular and valid in form, found by a duly constituted grand jury. Until that indictment is judicially declared invalid upon evidence dehors the record, showing its invalidity, it cannot be said that the court is proceeding without jurisdiction in bringing

the defendant to trial thereon.   In other words, an indictment reg-
ular and valid in form cannot be annulled by a writ of prohibition.
With these suggestions, I concur fully in the opinion of Mr. Justice
PATTERSON, and also in the opinion of Mr. Justice McLAUGH-
LIN, with the exception that I do not agree with the intimations
contained therein that the motion to dismiss the indictment was
properly denied.

INGRAHAM, J. (dissenting).   This application presents several
novel and interesting questions, but the necessity of an early deci-
sion and the limited time at my disposal make a full discussion im-
possible.   I shall therefore state quite briefly the considerations that
have satisfied me that the writ should issue.

The Bill of Rights, made a part of the Constitution of this state
(article 1, § 6), provides that:

"No person shall be held to answer for a capital or otherwise infamous
crime * ' * * unless on presentment or indictment of a grand jury. * * *
No person shall be subject to be twice put in jeopardy for the same offense;
nor shall he be compelled in any criminal case to be a witness against himself;
nor deprived of life, liberty or property without due process of law."

These provisions in their present form have been a part of the
Constitution of this state since 1822.   They protect each person
from being called to answer for any serious crime, except upon an
indictment by a grand jury, and each person against whom there
is a criminal charge from being compelled to be a witness in any
criminal proceeding against himself.   I apprehend that a judgment
of a court convicting a person of a felony, unless the prosecution
were based upon an indictment by a grand jury, would be absolute-
ly void; and so a conviction based upon an indictment which was
obtained by compelling a witness to be a witness against himself
would be contrary to the fundamental law of the land, and ineffectu-
al to justify a detention of the person so convicted.   A violation or
disregard of the rights secured by these provisions of the Constitu-
tion is entirely different from an order in the course of a criminal
proceeding where these constitutional rights of the accused were
observed, but in which legal rules had been violated, for these pro-
visions of the Constitution are to protect the individual, not against
a judgment or conviction, but against a criminal prosecution, except
one in which the rights secured to him by these provisions of the
Constitution are respected.   No person is to be held to answer for
a capital or otherwise infamous crime, unless on presentment or in-
dictment by a grand jury; and coupled with that prohibition is the
equally absolute one that no person shall be compelled in any crimi-
nal case to be a witness against himself.

It seems to me clear that an indictment obtained after compelling
a person against whom a charge is presented to the grand jury to
be a witness against himself is not an indictment upon which that
person can be tried, without a violation of both the spirit and the
letter of these provisions of the Constitution.   To require a person
to answer for a crime, there must be an indictment, but either in
obtaining that indictment, or upon a trial thereon, the person char-

ged with the crime is protected from being compelled to testify against himself; and an indictment obtained upon the testimony of a person against whom the charge is pending, where he is compelled to be a witness against himself, is an indictment obtained by violating the express right conferred upon every person in this state, and therefore is not an indictment contemplated by the provisions of the Constitution, which is necessary before a person can be compelled to answer—that is, to be put upon trial for the crime with which he is charged. I do not think it is any answer for the district attorney to say that he should be allowed to try the person charged with the commission of a crime upon an indictment thus obtained, and, if the person is convicted, to allow him to raise the question on appeal. For the Constitution expressly provides that no one shall be held to answer for a crime unless an indictment is obtained, and an indictment obtained by a violation of a right reserved to every citizen by the same provision of the Constitution is not an indictment contemplated by this section of the Constitution, which would justify the authorities in holding the defendant to answer. It would be a reproach upon the administration of justice to compel a defendant to be convicted of a crime and imprisoned where the conviction was obtained by a violation of a right secured to him by the fundamental law of the state. I am therefore convinced that an indictment thus obtained is not the indictment contemplated by the Constitution, which justifies any court in compelling a person charged with a crime to answer the charge.

This court and the Court of Appeals, in the late case of People ex rel. Lewisohn v. O'Brien, 81 App. Div. 51, 80 N. Y. Supp. 816, affirmed 176 N. Y. 253, 68 N. E. 353, discussed the right assured to every citizen of this state by this provision of the Constitution; and the Court of Appeals followed and approved Counselman v. Hitchcock, 142 U. S. 547, 12 Sup. Ct. 195, 35 L. Ed. 1110, saying:

"The meaning of the constitutional provision is not merely that a person shall not be compelled to be a witness against himself, but its object is to insure that a person shall not be compelled, when acting as a witness in any investigation, to give testimony which may tend to show that he himself has committed a crime"—

And cited with approval the opinion of Mr. Justice Blatchford in Counselman v. Hitchcock, where he says:

"This provision must have a broad construction in favor of the right which it was intended to secure. The matter under investigation by the grand jury in this case was a criminal matter—to inquire whether there had been a criminal violation of the interstate commerce act. If Counselman had been guilty of the matters inquired of in the questions which he refused to answer, he himself was liable to criminal prosecution under the act. The case before the grand jury was therefore a criminal case. The reason given by Counselman for his refusal to answer the questions was that his answers might tend to criminate him, and showed that his apprehension was that if he answered the questions truly and fully, as he was bound to do if he should answer them at all, the answers might show that he had committed a crime against the interstate commerce act, for which he might be prosecuted. His answers, therefore, would be testimony against himself, and he would be compelled to give them in a criminal case. It is impossible that the meaning of the constitutional provision can only be that a person shall not be compelled to be a witness against himself in a criminal proceeding against himself. It would

doubtless cover such cases, but it is not limited to them. The object was to insure that a person should not be compelled, when acting as a witness in any investigation, to give testimony which might tend to show that he himself had committed a crime."

I have cited this case as an authority for the construction which should be given to this provision of the Constitution. Where the criminal charge is against a third party, any person except the one against whom the charge is made may be called as a witness, and he can only be excused from answering by claiming the privilege that his answer would tend to criminate him; but the person against whom the charge is made cannot, without an express violation of this constitutional provision, be called as a witness upon the investigation before the grand jury. The case being, as Mr. Justice Blatchford said, "a criminal case," the person charged with the crime cannot be compelled even to be sworn as a witness.

In Wynehamer v. People, 13 N. Y. 378, in discussing a provision of a statute, the effect of which was to say to the defendant, "You shall not go into your defense unless you will not only answer to your innocence, but make yourself a witness and testify to all the circumstances of the case," Judge Selden, speaking for the Court of Appeals, says:

"This, for all substantial purposes, is compelling him to be a witness against himself. It is doing precisely that against which it was the object of the Constitution to protect him, viz., searching his conscience under the constraint of an oath. There is no difference between compelling a man to be sworn, and assuming his guilt if he refuses, because his refusal has precisely the same effect as if he was sworn and testified to his own guilt; it convicts him. Indeed, the provision is virtually compulsory, as there could scarcely be a more effectual way of compelling a man to be sworn than to say that unless you consent you shall be convicted and punished as a criminal. The section, therefore, is, in this respect, in my judgment, a plain violation of the Constitution."

There can be no claim that the relator waived this constitutional right. What happened before the prior grand jury, where the relator may be said to have made a voluntary statement, cannot affect the investigation before the grand jury at which the indictment was obtained. Nothing followed the investigation before the prior grand jury, and the proceeding before this grand jury was one de novo. The proceedings before the former grand jury were not a part of the proceeding before this, and a waiver before a former grand jury, if one there was, did not and could not prevent, upon the new investigation, the defendant from claiming that he was entitled to the protection secured to him by the Constitution. I am therefore convinced that, if this investigation was against the relator, it was a violation of this provision of the Constitution to call the relator as a witness.

The learned district attorney does not deny that he subpœnaed the relator to appear before the grand jury as a witness in a charge against Dodge et al. He was investigating charges against the relator in connection with the crime upon which the grand jury subsequently returned an indictment. The relator appeared before the grand jury and requested information as to the nature of the proceeding, and the name of the parties against whom it was directed,

whereupon the district attorney advised the grand jury that no witness had any right whatever to know the subject of the inquiry, and information was refused. He then protested against being sworn. His protest was overruled, and he was sworn as a witness, and was interrogated by the assistant district attorney and the members of the grand jury. Again and again he insisted that this examination was in violation of the rights given to him by this constitutional provision. He was threatened with a presentment to the court, with a request that he be punished for contempt, and finally, after answering questions asked him which tended to show his relation with the other persons against whom indictments were presented, objected to answering further upon the ground that his answers would tend to criminate him; a position before the grand jury which, under the circumstances, was equivalent to a confession of guilt—the very position which it was designed by this provision of the Constitution to meet. One of the charges against the relator was conspiracy with one Steinhart, who was indicted with him. To sustain an indictment, there must be evidence of a combination between the relator and Steinhart; and, in considering such a charge, the warning of the assistant district attorney to the grand jury that they must consider Steinhart's evidence against Hummel, and Hummel's evidence against Steinhart, to determine whether such a conspiracy or combination existed, is almost a burlesque. The jury could find from Steinhart's evidence that Hummel was a conspirator, and from Hummel's evidence that Steinhart was a conspirator, and thus these defendants, charged with a crime, and having been compelled to testify, were indicted upon their joint testimony; and upon the back of the indictment was the name of the relator as a witness upon which it was found.

The next question is whether this writ is a proper method to prevent the court below from trying this relator upon an indictment thus obtained in violation of this provision of the Constitution. The learned district attorney insisted with great earnestness that prohibition was not the proper remedy, that it is never granted where the error can be reviewed by appeal, and that the relator must wait until he is convicted of the crime and sentenced to imprisonment, and possibly actually confined in State's Prison, until he can claim from a court the protection that the Constitution has given him. We have lately considered the object of this writ in People ex rel. v. Fitzgerald, 73 App. Div. 339, 76 N. Y. Supp. 865; but I think, under the well-settled rules in this state, that this is a case in which the remedy of prohibition is applicable. The defendant made this motion before the Supreme Court to dismiss the indictment upon the ground that his constitutional rights had been violated by his being compelled to be sworn as a witness before the grand jury. That motion was denied. The defendant therefore has exhausted his remedy in the Supreme Court without obtaining the relief to which, as I think, he was clearly entitled. Section 321 of the Code of Criminal Procedure provides that the only pleading for a defendant indicted for a crime is either a demurrer or a plea. Section 323 states the grounds of demurrer, which do not include a violation

of this provision of the Constitution. There can be no method, therefore, by which this point can be raised upon the trial of the action. Section 313 of the Code of Criminal Procedure prescribes the grounds of a motion to set aside an indictment, and the objection taken is not included within the grounds there specified. No other method is prescribed by the Code by which this point can be raised, and, if I am right in the view that I have taken of an indictment obtained by a violation of this provision of the Constitution, the indictment itself being void as found in violation of the Constitution, the court was bound at any time, upon its attention being called to such violation, to refuse to proceed further with the trial. That motion to set aside the indictment was made and denied, and there is no method by which the relator can review the denial of that motion by an appeal, unless it is by an appeal from the final judgment. The defendant therefore is in the position of being called for trial before the court upon an indictment found in violation of the provisions of the Constitution, with no method of reviewing the determination of the court that he must be so tried, unless he is entitled to this writ.

In Quimbo Appo v. People, 20 N. Y. 533 (one of the leading cases of this country upon a writ of prohibition), the plaintiff in error had been tried and convicted at the Court of Oyer and Terminer of murder in the first degree. At a subsequent term of that court the defendant made a motion for a new trial upon exceptions and newly discovered evidence. The district attorney having taken the objection that the court was without authority to grant a new trial after a conviction and entry of judgment, the court overruled that objection, and announced itself as ready to proceed with the motion, whereupon the district attorney obtained a writ of prohibition, directed to the Court of Oyer and Terminer, prohibiting that court from hearing that motion. That writ so granted was sustained by the Court of Appeals. The objection was taken in that case that is taken here—that the Court of Oyer and Terminer, being a court of general jurisdiction, had power to determine whether or not it had jurisdiction to hear that motion, and, having determined that it had jurisdiction, the only method to review that determination was by appeal. But the Court of Appeals overruled that objection. Judge Selden, delivering the opinion of the court, said:

"But it is said that, when the inferior court or tribunal has jurisdiction of the action or of the subject-matter before it, any error in the exercise of that judgment can neither be corrected nor prevented by a writ of prohibition. It is true that the most frequent occasions for the use of the writ are where a subordinate tribunal assumes to entertain some cause or proceeding over which it has no control. But the necessity for the writ is the same where, in a matter of which such tribunal has jurisdiction, it goes beyond its legitimate powers, and the authorities show that the writ is equally applicable to such case."

And after citing several cases the court continued:

"These cases prove that the writ lies to prevent the exercise of any unauthorized power in a cause or proceeding of which the subordinate tribunal has jurisdiction, no less than when the entire cause is without its jurisdiction. The broad, remedial nature of this writ is shown by the brief statement of a case by Fitzherbert. In stating the various cases in which the writ will lie,

he says: 'And if a man be sued in the Spiritual Court, and the judges there will not grant unto the defendant the copy of the libel, then he shall have a prohibition, directed unto them for a surcease,' etc., until they have delivered the copy of the libel, according to the statute made Anne 2 H. 5 (F. N. B. tit. 'Prohibition'). This shows that the writ was never governed by any narrow, technical rules, but was resorted to as a convenient mode of exercising a wholesome control over inferior tribunals. The scope of this remedy ought not, I think, to be abridged, as it is far better to prevent the exercise of an unauthorized power, than to be driven to the necessity of correcting the error after it is committed."

Judge Bacon, in his dissenting opinion, says:

"I concur entirely in the opinion that the writ of prohibition was a proper mode to be adopted by the district attorney to stay the action of the Oyer and Terminer, provided that court had not power to give the relief asked for by the prisoner, and grant the application for a new trial. It may be a very ancient remedy, and has undoubtedly been rarely resorted to in our recent practice."

In Thomson v. Tracy, 60 N. Y. 36, Judge Allen, delivering the opinion of the court, says:

"A writ of prohibition is to prevent the exercise by a tribunal possessing judicial powers of jurisdiction over matters not within its cognizance, or exceeding its jurisdiction in matters of which it has cognizance."

In People ex rel. Sprague v. Fitzgerald, 15 App. Div. 540, 44 N. Y. Supp. 556, affirmed by the Court of Appeals 156 N. Y. 689, 50 N. E. 1121, a writ of prohibition was issued to prevent a surrogate from removing an administrator, although the surrogate had power to remove in a proper case; and in People ex rel. Mayor v. Nichols, 79 N. Y. 591, it was held that a writ of prohibition should issue when it appeared that the court to which it was addressed was doing something which "is contrary to the general law of the land." The court there said:

"Where, however, the statute has imposed restrictions as to the circumstances under which such 'inferior court or judge thereof' may act in matters otherwise within its jurisdiction, and these restrictions are disregarded, the party aggrieved may have a remedy by prohibition. This is the doctrine stated in Quimbo Appo v. People, 20 N. Y. 531, and by Jacobs in the citation there made. It goes no further. The remedy may be had to prevent the violation of some fundamental principle of justice, or the transgression of the 'bounds prescribed by law.' * * * The inquiry, then, is whether the justice who was holding the Special Term had mistaken the practice in a vital particular, or was doing anything manifestly outside of or beyond the jurisdiction of the court."

See, also, People ex rel. Hess v. Inman, 74 Hun, 130, 26 N. Y. Supp. 329.

These cases establish the principle that, where a court is about to act without jurisdiction or in excess of jurisdiction, prohibition will lie, and any act based upon a violation of a privilege secured by the Constitution is an act in excess of jurisdiction. In Forest Coal Co. v. Doolittle, 54 W. Va. 210, 46 S. E. 238, a writ was granted where a judge was disqualified from hearing a case. In California it has been held that a court will be restrained by a writ of prohibition from trying a case where no legal indictment has been found. Levy v. Wilson, 69 Cal. 105, 10 Pac. 272; Bruner v. Su-

perior Ct., 92 Cal. 239, 28 Pac. 341; Terrill v. Superior Court of Santa Clara County (Cal.) 60 Pac. 38.

I have no doubt but that this indictment thus found after a compulsory examination of the defendant was an indictment found in violation of the Constitution, and thus not an indictment upon which this defendant could be held to answer; that the relator has no other remedy, and it is the duty of this court to restrain the Trial Term from proceeding to try the relator upon an indictment thus found in violation of the Constitution, and in disregard of the rights of the relator secured to him thereby; and that for this reason an absolute writ of prohibition should issue.

O'BRIEN, P. J., concurs in result.

---

### In re WEBSTER et al.

(Supreme Court, Appellate Division, Third Department. June 29, 1905.)

1. EVIDENCE—ANCIENT DOCUMENTS.

The record of proceedings before a board of supervisors which took place 85 years before a hearing involving the same records from the books of a town clerk and from the minute book of a town certified under dates about 70 and 85 years, respectively, before the hearing, and commissioners' maps in partition proceedings indorsed under a date 100 years before the hearing, are ancient documents, within the rule that such documents, when in themselves free of any indication of fraud or any invalidity, and if they come from the proper custody, the court deems proper proof themselves.

[Ed. Note.—For cases in point, see vol. 20, Cent. Dig. Evidence, §§ 1613–1627.]

2. SAME—SOURCE OF PRODUCTION—COUNTY RECORDS.

3. SAME—SECONDARY EVIDENCE—CERTIFIED COPIES.

A record from the books of a town clerk, which is certified by the clerk "to be a true copy from the original report" of commissioners appointed by the county board of supervisors to settle questions relating to the maintenance of bridges, is secondary evidence.

4. SAME—PRESUMPTION—PERFORMANCE OF OFFICIAL DUTY.

It is presumed that commissioners appointed under Laws 1818, p. 77, c. 91, § 5, to equalize the burden resting on various towns in the support of bridges, performed the duty imposed by such section of returning their proceedings to the court of common pleas.

5. SAME—SECONDARY EVIDENCE—FOUNDATION—LOSS OF ORIGINAL.

Where the legal presumption that commissioners appointed under Laws 1818, p. 76, c. 91, to adjust the burden of maintaining bridges between certain towns, reported to the court as required by the act, is strengthened by certificates of the county and town clerks that they did make and