Btjbke, J. (dissenting).
On October 23, 1958 Morgan D. Ryan, Esq., a public official, was called as a witness to appear pursuant to subpoena before the Extraordinary Grand Jury which is investigating official corruption in Ulster County.
After Ryan was initially sworn, he agreed to execute a written waiver of any immunity or privilege concerning all interrogations bearing on his official conduct as Resource Assistant in the Welfare Department (as required by N. Y. Const., art. I, § 6, which provides that a refusal to sign the waiver will result in a discharge from public employment). Thereupon, he was fully advised that aU testimony that he might give on any other matter may be used against him and that the Grand Jury was not conferring any immunity on him. Ryan was further informed that he had a right under the Constitution of the State of New York and the Federal Constitution to refuse to answer any question if he believed the answers would incriminate him.
Not only did Ryan expressly declare that he understood the admonitions, but he also evidenced his familiarity with the legal implications of these statements by stating that he had discussed and been advised, on the matter of his constitutional privilege, and on the questions of waiver and immunity, on a previous occasion in the presence of his attorney.
Ryan was thereupon questioned and gave testimony, which occupies 101 printed pages of the record before us, without refusing to answer on the grounds of self incrimination.
Ryan returned to the Grand Jury room on October 27 and requested additional time to prepare certain financial data, stat *219 ing that if the request was refused he would invoke his constitutional privileges on the advice of counsel. The examination of Eyan was deferred until November 6 when he returned and handed the foreman a letter stating that on the advice of counsel he declined to testify on the ground of self incrimination. Then Ryan was cited for contempt.
The Grand Jury after hearing testimony given by other witnesses, and after receiving instructions to disregard Ryan’s testimony, indicted him for conspiracy to bribe public officers and of giving a bribe to such officers.
The questions raised arc: (1) Did Ryan receive complete immunity by reason of the subpoena to appear before the Extraordinary Grand Jury? (2) Is the testimony which Ryan gave without invoking his privilege deemed “ compelled ” so that the indictment against him must be dismissed?
By its plain language, section 2447 of the Penal Law only confers immunity after a witness (or a prospective defendant) invokes his privilege against self incrimination and is then directed to answer the questions propounded. There is no dispute that the immunity so offered is as broad as the privilege. Hence, after the grant of immunity, the invocation of the privilege against self incrimination is not legally possible, and further refusal to answer is contumacious.
In this regard the comparatively new section 2447 does not deny to anyone who might deem himself incriminated the right to invoke the privilege nor does it in any way limit the immunity that was granted under the former procedure. The difference between section 2447 and its predecessor statute is that the prior statute granted complete immunity in advance to any witness subpoenaed, and, in order to preclude any immunity, a written waiver was required. The wisdom of this procedure was examined by the New York State Crime Commission, and, upon its recommendation, the entire concept of immunity statutes was revised in order to preclude hasty and possibly unjustified grants of immunity. In this regard the distinction or difference between section 2447 and the previous section is merely one of procedure and not of substance. The applicability of the privilege is not limited nor is the immunity, when offered, any less than the immunity that was offered previously.
We believe that the Legislature may change the procedural rules as to when and how immunity should be granted if in *220 doing so the rules do not impair any of the constitutional rights of a witness or prospective defendant.
The Act of Congress of February 11,1893, chapter 83 (27 U. S. Stat. 443; now U. S. Code, tit. 49, § 46), of the United States (like the rule which obtained prior to the enactment of section 2447 [see L. 1953, chs. 891, 892]) provided for a complete immunity at the outset of the hearing which prevented the invocation of any privilege against self incrimination since there no longer wa's anything that could be incriminating. The constitutionality of the Act of Congress of February 11, 1893 of the United States was upheld by the Supreme Court in Brown v. Walker (161 U. S. 591).
A similar Federal statute (U. S. Code, tit. 18, § 3486) gave immunity to subpoenaed witnesses (or prospective defendants) before congressional investigating committees or Federal Grand Juries at the outset so that they could not rely upon the Fifth Amendment privilege. The constitutionality of this section was upheld and interpreted to preclude even State prosecutions based upon the testimony of the witness that was obtained in such a manner (Adams v. Maryland, 347 U. S. 179).
However, section 3486 of title 18 of the United States Code was amended in 1954 by Congress. It is apparent that this statute does not give complete immunity to a subpcenaed'witness (or prospective defendant) at the outset but requires him to invoke his constitutional privilege in order to prevent the Government from using the evidence obtained against him in any subsequent proceeding. After the privilege is invoked the Grand Jury or the United States Attorney may make an application for a court order directing the witness to answer and any evidence obtained therefrom cannot be used against the defendant. The statute grants complete immunity which precludes the further invocation of the privilege.
Section 3486 of title 18 of the United States Code is substantially the same as section 2447 of the Penal Law. Moreover, both statutes change the procedure for the granting of immunity from the predecessor statutes in the same manner. The same reason prompted the change in both instances, i.e., to prevent a hasty and unjustified grant of immunity in advance. (See H. R. Rep. No. 2606, 83 Cong., 2d Sess. [1954]; 3rd report of N. Y. State Crime Comm., N. Y. Legis. Doc., 1953, No. 68, pp. 14-17, 26-29.)
*221 The constitutionality of the amended statute was upheld by the United States Supreme Court in Ullmann v. United States (350 U. S. 422 [1956]).
There Ullmann, a prospective defendant, was subpoenaed to appear before a Federal Grand Jury in the Southern District of New York. Upon examination, Ullmann repeatedly invoked his Fifth Amendment privilege against self incrimination (since he was not under any immunity). Upon application of the United States Attorney, Ullmann was directed by the District Court to answer which he refused to do, again invoking his privilege (although he was now under a grant of complete immunity pursuant to the terms of the statute). Ullmann was thereupon convicted of contempt. The United States Supreme Court granted certiorari in the Ullmann case in view of the differences between the legislation sustained in Brown v. Walker (161 U. S. 591, supra) and the act under which Ullmann was cited for contempt (see Ullmann v. United States, 349 U. S. 951, 350 U. S. 422, 425). Upon the appeal the Supreme Court sustained the act and Ullmann’s contempt citation for failing to answer when directed.
Therefore, the choice of the witness or prospective defendant is either to invoke the privilege because he deems the testimony incriminating, or to respond freely to questions. This choice is entirely within his province. (See United States v. Burr, Fed. Cas. No. 14692e, 25 Fed. Cas. 38, 40.) If he testifies knowing that he has no immunity and that he can invoke the privilege against self incrimination (if he determines that would be the result of his answers) without invoking the privilege, such testimony is deemed to be freely given and may be used against him at some future date.
Historically, the constitutional privilege has been recognized only as an option.
As Judge Samuel Seabury of this court said: “As we look at some of the uses which the criminal classes have made of the constitutional provisions, one might suppose that the far-seeing barons who wrung the Charter from King John at Runnymede were intent upon safeguarding the twentieth century racketeer, gangster, kidnaper, gunman and corrupt political leader in the prosecution of their sinister vocations. It ought to be possible to find a way, by judicial interpretation, to use these constitutional provisions for the protection of liberty without giving *222 them such fanciful and far-fetched interpretations as to convert them into a weapon by which criminals can make war safely upon organized society and its law-abiding members. * * * Let me refer to the privilege against self-incrimination. It is not derived from the Magna Carta, Bill of Bights or other great charters which have marked the progress of English liberty * * * it is, as the Supreme Court has held, not one of the basic and fundamental rights which is incapable of change by the people of any state".* (8 Wigmore, Evidence [3d ed.j, § 2275o.)
The Constitutions of this State and of the United States only forbid compelling a person to be a witness against himself.
The privilege against self incrimination, like all personal privileges, may be waived (8 Wigmore, op. cit., supra). In furtherance of this fundamental proposition it has been uniformly held that when a witness, even a prospective defendant witness, is subpoenaed by a Grand Jury or other investigative body, and is fully informed and apprised of his rights and voluntarily testifies, he is deemed to have waived his privilege and to have testified freely (People v. Molineux, 168 N. Y. 264; Teachout v. People, 41 N. Y. 7; People ex rel. Hummel v. Davy, 105 App. Div. 598, 603, affd. 184 N. Y. 30; Rogers v. United States, 340 U. S. 367, 370-371; Smith v. United States, 337 U. S. 137; United States v. Cleary, 265 F. 2d 459 [2d Cir., March 30, 1959]).
It is obvious that if we accept defendant’s position that the constitutional privilege is infringed by the Grand Jury’s subpoena and the oath so that the testimony that Byan gave must be deemed “ compelled ” then no question of the waiver of the privilege could have been raised in the cited cases.
In People ex rel. Hummel v. Davy (105 App. Div. 598, 603, *223 affd. 184 N. Y. 30, supra), the court said: “ Merely being compelled to appear in pursuance of a ¡subpoena, and be sworn, is no violation of a constitutional privilege, for the witness may take the oath so that his assertion of privilege shall be made under the sanction of an oath.”
In United States v. Cleary (supra, pp. 462-463), the United States Court of Appeals for the Second Circuit declared:
“ On the record before us we have no doubt that Cleary’s testimony was completely voluntary. Appearing before a grand jury is not in itself an unduly coercive situation. * * * And there are no additional facts here to indicate coercion. * * * The important factor is the lack of even the slightest suggestion that government officials applied any pressure or engaged in any form of misconduct which contributed to his testifying. * * *
‘ ‘ Our law endeavors to establish a fair balance between proper and useful police investigation and coercive attempts at surprise or forced confession. * * * we are not disposed to elevate to the dignity of a constitutional right restrictions on ordinary investigation which in the present condition of society may be an unwarranted extravagance.”
In Kaplan v. United States (7 F. 2d 594, 597 [2d Cir., 1925], cert, denied 269 U. S. 582), Judge Learned Hand said: “ there is not the slightest warrant of law for saying that in the absence of statute any one may be quit of his crimes by testifying either before a grand jury or anywhere else. * * * A man has, of course, the right to stand mute if he will; but, if he speaks, he does not by that purge himself of his crime. He may be indicted, tried and convicted, quite as though he had stood on his privilege. The contrary notion is a thorough perversion of the whole principle of self-incrimination, perhaps arising from a misunderstanding of those statutes which, in order to compel persons to testify at all, give them plenary absolution.” (See, also, 3 Wharton, Criminal Evidence [12th ed.], § 733, p. 45; 8 Wigmore, Evidence [3d ed.], § 2281, p. 467.)
These principles were carefully considered by experts who are responsible for the enactment of section 2447. (Cf. 3rd Report of N. Y. State Crime Comm., N. Y. Legis. Doc., 1953, No. 68, p. 15; 1943 Report of N. Y. Law Rev. Comm., N. Y. Legis. Doc., 1943, No. 65[B].)
Section 2447 in no way violates the right of a prospective defendant to assert his privilege. Indeed, it contemplates that *224 he may. In fact, it cannot become operative until he asserts his privilege.
Consequently, the pivotal point of the discussion must then turn on whether Ryan testified without invoking his privilege with complete knowledge of the consequences and his rights. We acknowledge that, even though the rules may be changed by the Legislature or Congress, we have to determine whether the witness or prospective defendant was informed of the purposes of the inquiry, advised of his rights and warned of the consequences of his refusal to testify. (People v. De Feo, 308 N. Y. 595, 604.)
In People v. De Feo (supra) this court found that De Feo when questioned as a witness under section 2447 did not know the purpose of the inquiry; was not informed of his rights (i.e., invoke the self incrimination privilege) as a prospective defendant ; did not claim his privilege and did not sign any waiver of immunity.
However, Ryan has appeared as a witness pursuant to subpoena. He waived immunity and the right to invoke the privilege (written waiver) as to any questions that might be asked concerning his official duties and acts in the Welfare Department. Ryan further had the advice of an attorney on these matters. He was informed that any testimony that he might give at the examination could be used against him. He was also informed that he had a right to invoke the privilege against self incrimination and that the Grand Jury was not conferring any immunity upon him. Moreover, Ryan knew the purpose and scope of the Grand Jury hearing before he appeared. With all this in mind, Ryan testified freely without invoking the privilege.
We do not believe that section 2447 in the light of the facts of this case can be held to be unconstitutional.
Finally, the refusal of Ryan to sign a general waiver of immunity cannot be found to be an invocation of the privilege in view of the fact that he gave his testimony after the following colloquy:
“ Q. As to any other testimony that you may give, or any questions that may be asked of you, I must advise you now that any answers you may give or any testimony that you may give, may be used against you in any proceeding at any time. In other words, the Grand Jury, by calling you before it at this time, is not conferring any immunity on you, and that any testi *225 mony you may give may be used against you. Bo you understand that? A. Yes sir.
Q. I might also advise you that you have a right, under the Constitution of the State of New York, and the Federal Constitution, to refuse to answer any questions if you feel that the answers to those questions will incriminate you. Bo you understand that? A. Yes, sir.
By Mr. Beisman:
Q. Has your attorney gone over this matter of incrimination and immunity with you at a previous date ? A. This was months ago, sir. I haven’t seen him lately.
By Mr. Tompkins:
Q. As a matter of fact, Mr. Byan, in your attorney’s presence in the past, when you were questioned by Commissioner Beuter’s staff, you refused to answer any questions and claimed your constitutional privilege; is that so? A. That’s right.
Q. So that you did discuss that with your attorney. A. At that time, that was months ago.
Q. You were advised on that subject, were you not? A. That was mentioned, yes sir.” (Emphasis added.)
The order of the Appellate Division dismissing the indictment should be reversed and the indictment reinstated.
Judges Froessel and Van Voorhis concur with Judge Fuld; Judge Dye concurs in a separate opinion; Judge Burke dissents in an opinion in which Chief Judge Conway and Judge Desmond concur.
Order affirmed.

 “ It [the privilege] has no place in the jurisprudence of civilized and free countries outside the domain of the common law, and it is nowhere observed amdng our own people in the search for the truth outside the administration of the law.” (Twining v. New Jersey, 211 U. S. 78, 113 [Moody, J.]) “This [privilege against self incrimination] too might be lost, and justice still be done. Indeed, today as in the past there are students of our penal system who look upon the immunity as a mischief rather than a benefit, and who would limit its scope, or destroy it altogether. No doubt there would remain the need to give protection against torture, physical or mental. * * * Justice, however, would not perish if the accused were subject to a duty to respond to orderly inquiry.” (Palko v. Connecticut, 302 U. S. 319, 325-326 [Cardozo, J.].)