**UNITED STATES of America,**
**Appellee,**

v.

**Mary Lee GARNES, Defendant-**
**Appellant.**

**No. 364, Docket 24956.**

United States Court of Appeals
Second Circuit.

Argued May 14, 1958.

Decided Aug. 8, 1958.

532

Malcolm Monroe, New York City, for defendant-appellant.

Donald H. Shaw, Asst. U. S. Atty., S. D. N. Y., New York City (Paul W. Williams, U. S. Atty., and William K. Zinke, Asst. U. S. Atty., New York City, on the brief), for appellee.

Before CLARK, Chief Judge, and SWAN and LUMBARD, Circuit Judges.

CLARK, Chief Judge.

Defendant appeals from a judgment of conviction for illegal possession of narcotics in violation of 21 U.S.C. §§ 173, 174, and 26 U.S.C. §§ 4724(c), 7237(a). The errors alleged are that the trial court allowed the prosecution to place in evidence the fruits of an illegal search and seizure, that it erred in instructing the jury as to the elements of a violation of 21 U.S.C. §§ 173, 174, and that the court was without jurisdiction to try the defendant because the grand jury's indictment against her was based on a transcript of her involuntary testimony before another grand jury. The latter ground was the subject of a motion in arrest of judgment which Judge Dawson denied in a reasoned opinion reported in 156 F.Supp. 467.

■ The Government seeks to justify as incident to a lawful arrest the search of defendant's apartment and the resulting seizure of narcotics paraphernalia which were admitted in evidence by the trial court. Defendant attacks the lower court's finding of probable cause for the arrest, and asserts that she was arrested outside her apartment—thus precluding the arrest as a basis for the search and seizure. Agnello v. United States, 269 U.S. 20, 46 S.Ct. 4, 70 L.Ed. 145. The pertinent facts are not atypical of cases of this sort. Shortly after midnight on the night of May 31, 1957, Bureau of Narcotics Agents arrested Norman Becknell in New York City as he was in the act of selling three ounces of heroin to Narcotics Agent James Bailey. A few moments later they arrested Frank Gayles, whom Becknell pointed out to them as his source of supply. After questioning Becknell and Gayles, the agents learned that Gayles had obtained the narcotics that day from defendant and her paramour, George Wilson, at their apartment. Gayles further stated that the balance of an ounce of pure heroin from which he and Wilson had "cut" the three ounces of narcotics delivered to Agent Bailey remained at defendant's apartment and that the agents could probably then find her in the apartment, and Wilson either with her or standing in front of one of two nearby bars. As Gayles had mentioned having previous dealings with Lubert, another Bureau of Narcotics Agent, the arresting agents checked on Gayles' reliability by telephoning that agent. He informed them that any information supplied by Gayles "would be worth the trouble to find out if it was true or not." At this point the agents had more than sufficient information to establish probable cause for defendant's arrest at her apartment; and the lateness of the hour, coupled with the danger of removal or destruction of the contraband the agents reasonably believed to be in the apartment, justified them in proceeding without a warrant. See Johnson v. United States, 333 U.S. 10, 14, 15, 68 S.Ct. 367, 92 L.Ed. 436.

■■ The testimony below as to the precise place and manner of defendant's arrest was squarely contradictory. We

must hold that the trial court's finding that she was arrested in her apartment, as Agents Bailey and Ward testified, and not in the hallway of the apartment building, as she testified, is not clearly erroneous. It follows that the search of the apartment is lawful as incident to that arrest. United States v. Rabinowitz, 339 U.S. 56, 70 S.Ct. 430, 94 L.Ed. 653; Harris v. United States, 331 U.S. 145, 67 S.Ct. 1098, 91 L.Ed. 1399. Miller v. United States, 78 S.Ct. 1190, and Accarino v. United States, 85 U.S.App.D.C. 395, 179 F.2d 456, on which defendant relies, invalidate neither the arrest nor the search and seizure, since the rule of those cases is applicable only where arresting officers forcibly break into and enter a dwelling.

Defendant's second contention concerns the interrelation of the two statutory offenses with which she is charged in the indictment. Count I charges Mrs. Garnes with illegal possession of narcotics in violation of 21 U.S.C. §§ 173, 174, while Count II charges possession in violation of 26 U.S.C. § 4724(c). The Title 21 sections prohibit the receipt or concealment of a narcotic drug, knowing it to have been imported into the United States contrary to law. Section 174 provides further that "Whenever on trial for a violation of this subsection the defendant is shown to have or to have had possession of the narcotic drug, such possession shall be deemed sufficient evidence to authorize conviction unless the defendant explains the possession to the satisfaction of the jury." 26 U.S.C. § 4724(c) provides: "It shall be unlawful for any person who has not registered and paid the special tax provided for by this subpart or section 4702(a) to have in his possession or under his control narcotic drugs; and such possession or control shall be presumptive evidence of a violation of this subsection."

▮ ▮ Prior to 1956 the penalties for violating these sections were the same. The Narcotic Control Act of 1956, on which defendant relies, increased the penalty applicable to a first offender of the former sections from a 2–5 year

range to a 5–20 year one. The same act less significantly increased the penalty for a violation of 26 U.S.C. § 4724(c). On the basis of the legislative history of these changes, defendant argues for a Congressional intent to write into 21 U.S.C. § 174 a new requirement of proof, in addition to mere possession of narcotics, that the accused is a trafficker in such drugs. But the specification in § 174 of the facts that the Government must prove to secure a conviction is sufficiently unambiguous to bar reference to legislative history. Prudential S. S. Corp. v. United States, 2 Cir., 220 F.2d 655, 657. Moreover, Congress's purpose in enacting the 1956 amendments seems to have been to tighten the restrictions of existing law, not to increase the prosecution's burden of proving a violation. As the House committee puts it, the Act's purpose was "to provide more effective means for the eradication of the illicit trafficking in these drugs and for the elimination of the illegal uses of these drugs." H.R.Rep. No. 2388, 84th Cong., 2d Sess. (1956), 2 U.S.Code Cong. & Adm.News 3274 (1956). While Congress may have thought that one statute would be used for traffickers and another for addicts, it seems to have left the final choice in this matter to the discretion of the prosecutor.

▮ Defendant asserts that this construction of 21 U.S.C. § 174 lodges in the prosecutor an unconstitutionally broad discretion to choose between these two statutes. True, the Government's initial burden of proof seems exactly the same under both statutes—it need prove only the defendant's possession of the contraband narcotics. But the crimes defined by the statutes are not single and identic, since the proof which avoids the statutory presumption of one differs from that required for escaping the other. As such, it would not have been improper to impose separate and consecutive sentences for each count here, Gore v. United States, 78 S.Ct. 1280; Blockburger v. United States, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306; and the discretion to choose between such statutes is

traditionally the prosecutor's. Clemons v. United States, 4 Cir., 137 F.2d 302; cf. Berra v. United States, 351 U.S. 131, 76 S.Ct. 685, 100 L.Ed. 1013.

Defendant's final claim of error is that the indictment on which this prosecution is based is invalid because involuntary testimony given by Mrs. Garnes before another grand jury was presented to the grand jury which returned it. On June 11, 1957, defendant, who was then five months pregnant, suffered a miscarriage. On that same day Agent Bailey telephoned and asked her to come to the United States Courthouse the following day. Mrs. Garnes mentioned her condition; but Bailey, disbelieving her, informed her that she had to come and could be subpoenaed. The following day Mrs. Garnes came to the United States Courthouse, where she was interviewed by an Assistant United States Attorney. At the outset of this meeting he informed her that she had a right to remain silent and that she had a right to counsel. At no time during this interview did defendant request counsel, and her first reference to the miscarriage occurred near the end of the conversation. At that point she stated that she did not feel well. Thereupon the interview terminated.

Two days later, on June 14, at the prosecution's request and again without subpoena, Mrs. Garnes testified before a grand jury which returned indictments against her alleged coconspirators. Subsequently, when she refused to co-operate further with the Government and sought to avoid the efforts of Bureau of Narcotics Agents to get in touch with her, the Government procured an indictment against her. A transcript of this June 14 testimony was among the evidence presented to the grand jury which returned the indictment. At the trial the Government attempted to introduce portions of this same testimony in evidence, but Judge Dawson excluded them as involuntary. Asserting that the invalidity of the indictment deprived the court of jurisdiction to hear the case, defendant first raised her objection to the indictment in a motion for arrest of judgment. On this motion Judge Dawson again ruled or assumed that the defendant's testimony before the grand jury was involuntary, but held that the defect was not jurisdictional and that it had been waived by not being timely made. D.C.S.D.N.Y., 156 F.Supp. 467.

We feel that the trial court was in error in finding Mrs. Garnes' testimony involuntary on the facts of this case. The facts recited in the opinion on the motion for arrest of judgment show that at the time she gave this testimony the defendant was helping the Government all she could and that she testified voluntarily. United States v. Scully, 2 Cir., 225 F.2d 113, certiorari denied Scully v. United States, 350 U.S. 897, 76 S.Ct. 156, 100 L.Ed. 788; United States v. Klein, 2 Cir., 247 F.2d 908, 920–921. Defendant was advised of her privilege against self-incrimination, and offered an opportunity to employ and consult with counsel. This was more than adequate protection of her rights. United States v. Scully, supra, 2 Cir., 225 F.2d 113, certiorari denied Scully v. United States, 350 U.S. 897, 76 S.Ct. 156, 100 L.Ed. 788; see In re Groban, 352 U.S. 330, 346, 347, 77 S.Ct. 510, 1 L.Ed. 2d 376 (dissenting opinion of Justice Black).

Moreover, assuming that defendant's testimony was involuntary, the district court was correct in holding that defendant had waived this objection. In numerous contexts the Supreme Court has stated that an indictment valid on its face returned by a properly constituted grand jury is sufficient to call for a trial on the merits of the charge against the defendant. Lawn v. United States, 355 U.S. 339, 349, 350, 78 S.Ct. 311, 2 L. Ed.2d 321; Costello v. United States, 350 U.S. 359, 363, 76 S.Ct. 406, 100 L. Ed. 397. Ex parte Bain, 121 U.S. 1, 13, 7 S.Ct. 781, 787, 30 L.Ed. 849, on which defendant relies, does not contradict this view. There the indictment had been amended by the court and consequently

"the indictment on which he was tried was no indictment of a grand jury." The lower court's ruling, which we affirm, does not, as defendant asserts, "completely preclude the existence of any remedy for an invasion by the grand jury of the constitutional rights against compulsory self-incrimination and to consult with counsel and, by so doing, obliterate those rights." With the exception of the fact that the June 14 testimony was presented to the grand jury which indicted the defendant, all of the facts relevant to this claim of error were within the personal knowledge of the defendant immediately after she completed that testimony. As such, defendant could have moved to suppress the use of such testimony as evidence against her before another grand jury. In re Fried, 2 Cir., 161 F.2d 453, 1 A.L.R. 2d 996, certiorari dismissed 332 U.S. 807, 68 S.Ct. 105, 92 L.Ed. 384. And on a timely motion to quash the indictment, an affidavit of the facts surrounding her June 14 testimony, coupled with an affidavit on information and belief that this testimony was presented before the indicting grand jury, would have been sufficient to compel a response from the Government, by affidavit or by disclosure of the grand jury minutes, and a ruling on the merits of the motion by the court. See United States v. Scully, supra, 2 Cir., 225 F.2d 113, 116–120 (concurring opinion of Frank, J.), certiorari denied Scully v. United States, 350 U.S. 897, 76 S.Ct. 156, 100 L.Ed. 788. This procedure was followed in United States v. Giglio, 2 Cir., 232 F.2d 589, affirmed sub nom. Lawn v. United States, 355 U.S. 339, 78 S.Ct. 311, 2 L.Ed.2d 321.

Defendant has had a full and fair trial, where none of her allegedly involuntary testimony intruded and where there was ample evidence of her guilt. In such circumstances it would be utter nonsense to allow her to upset the entire proceedings on grounds well known to her prior to trial. Mrs. Garnes has been ably represented in these proceedings by court-appointed counsel, to whom we are vastly

indebted. Our affirmance of her conviction is no reflection on the thoughtfulness and thoroughness with which her rights were represented.

Judgment affirmed.