UNITED STATES of America, Appellee,

v.

George WILSON, Defendant-Appellant. No. 223, Docket 24850.

United States Court of Appeals Second Circuit.

Argued Feb. 3, 1959.

Decided Feb. 27, 1959.

---

See, also, 257 F.2d 796.

Daniel H. Greenberg, New York City, by assignment, for defendant-appellant.

John C. Lankenau, Asst. U. S. Atty., S.D.N.Y., New York City (Arthur H. Christy, U. S. Atty., and Mark F. Hughes, Jr., Asst. U. S. Atty., New York City, on the brief), for appellee.

Before CLARK, Chief Judge, MADDEN, Judge, United States Court of Claims,* and HINCKS, Circuit Judge.

MADDEN, Judge.

Defendant-appellant appeals from his conviction for possession of heroin, and conspiracy to violate the Federal narcotics law. One of the grounds for his appeal is that the denial by the trial judge of his motion to suppress evidence seized by an allegedly illegal search and seizure of his residence was reversible error. The facts constituting the allegedly illegal search and seizure are the same facts as those in a companion case involving one Mary Lee Garnes with whom the appellant resided. United States v. Garnes, 2 Cir., 258 F.2d 530. In that case this Court held that the search and seizure was proper as an incident of a valid arrest. Although a petition for certiorari is pending in the Garnes case, we will not await the Supreme Court's disposition of that case. We conclude, as this Court did in Garnes, that there was no illegal search or seizure.

Another ground of appeal is the appellant's claim that his privilege against self-incrimination under the Fifth Amendment of the Constitution of the United States was violated by the failure of the police officer making his arrest to advise him that he had a right to remain silent and that any statements made by him could be used against him.

The facts of this case are briefly as follows: Bureau of Narcotics Agents arrested one Becknell as he was in the act of selling heroin to Narcotics Agent Bailey. This occurred about 1:00 a. m. on June 1, 1957 in the City of New York. Shortly thereafter the agents arrested Gayles who was identified by Becknell as his source of supply. Upon questioning these two prisoners, the agents learned that Gayles had obtained the narcotics from Wilson, the appellant, and Mary Lee Garnes, at their apartment. Gayles did not remember the exact address of the apartment but did recall the telephone number, from which the agents were able to learn the address. Gayles also informed the agents that he believed the rest of the heroin was still in the apartment and that Garnes, and perhaps the appellant also, would be in the apartment at that time. The agents telephoned another Narcotics Agent who had previously used Gayles as an informer and ascertained that Gayles' information was reliable. The telephone call was made at 2:30 a. m. Because of the lateness of the hour and the danger of removal or destruction of the contraband,

* Sitting by designation pursuant to the provisions of 28 U.S.C. § 291(a).

the agents proceeded to the apartment without a warrant and placed Garnes under arrest at approximately 3:00 a. m. The apartment was searched incident to the arrest, and the search disclosed some narcotics on the kitchen table, together with the apparatus for using narcotics, and some narcotics in a handkerchief under the mattress of the bed. As stated above, this court in the Garnes case found that this search was lawful as incident to a valid arrest.

The search consumed about one-half hour. Shortly thereafter defendant returned to the apartment and let himself in with his key. He was placed under arrest. In response to Agent Bailey's statement "I guess you know why we are here," defendant replied, "Yes, you got me." Upon further questioning defendant stated that he was in the apartment that night when the heroin was cut, that it was Gayles' sale, and that all the narcotics in the apartment were his, appellant's.

The inculpatory statements of the appellant at the time of his arrest were admitted in evidence at his trial and, no doubt, contributed heavily toward his conviction. He asserts that they should not have been admitted, because the officers to whom he made the statements did not advise him of his right to remain silent, nor warn him that if he spoke what he said might be used against him at his trial. He points to that provision of the Fifth Amendment which says that an accused person shall not

"be compelled in any criminal case to be a witness against himself."

It would be difficult, indeed, as a matter of language, to make the Constitutional provision fit the appellant's case. He was not "compelled" to say anything. He was questioned, and he gave answers admitting guilt. The stretch of the Constitutional language for which the appellant contends could only be justified upon the hypothesis that there lurks in such situations an evil analogous to the evil of compelled testimony at which the Constitutional provision is expressly aimed, and that the protection of the Constitution ought to be extended, by generous interpretation, to strike down the comparable evil.

It is not an evil thing for one accused of crime to voluntarily admit his guilt. It is a good thing. It removes his crime from the list of unsolved crimes and enables the police to get about the task of solving other crimes on the list. It enables the Criminal Courts and their juries to reach decisions free from the uncertainties which trials involving principally circumstantial evidence involve. It brings down upon the accused no worse than is his due, the punishment prescribed by law for his crime.

If the activities of the police were of a sporting nature, they might well spurn the assistance which a voluntary admission of guilt gives them, or at least discourage it by suggesting to the accused that he should not lighten their task. They might in effect tell him that in the contest between them, as the protectors of society, and those who are accused of crime, they always win, and are therefore quite indifferent as to whether they win easily, as by default, or after the contest is played out to the end.

If the police said that, they would not be speaking the truth. They don't always, nor nearly always, solve crimes and bring the guilty to justice. They always have more useful things to do than to play the game of cops and robbers out to the end when they could have won it by letting the arrested person talk.

We feel no urge to elevate to the dignity of a Constitutional right a practice which, perhaps even as a matter of etiquette, may, in the present condition of society, be an unwarranted extravagance.

Pertinent precedents are United States v. Mitchell, 322 U.S. 65, 64 S.Ct. 896, 88 L.Ed. 1140; United States v. Heitner, 2 Cir., 149 F.2d 105.

The Court expresses its appreciation of the able services of Mr. Daniel H. Greenberg as assigned counsel for the appellant.

The judgment is

Affirmed.