UNITED STATES of America, Appellant,

v.

Richard A. CLEARY, Defendant-Appellee.

No. 227, Docket 25318.

United States Court of Appeals Second Circuit.

Argued Feb. 3, 1959.

Decided March 30, 1959.

Donald H. Shaw, Asst. U. S. Atty., S.D. N.Y., New York City (Arthur H. Christy, U. S. Atty., and Mark F. Hughes, Jr., Asst. U. S. Atty., New York City, on the brief), for appellant.

Leonard Maran, New York City, for defendant-appellee.

Before CLARK, Chief Judge, MADDEN, Judge, United States Court of Claims,* and HINCKS, Circuit Judge.

CLARK, Chief Judge.

 This is an appeal from an order of Judge Bryan, D.C.S.D.N.Y., 164 F. Supp. 328, dismissing an indictment charging the appellee, Richard A. Cleary, with thefts from the mails and conspiracy to commit mail thefts. As the order below is not based on the invalidity or construction of a statute and did not bar appellee's reindictment on the same charges, jurisdiction of this appeal exists in this court under 18 U.S.C. § 3731. See United States v. Storrs, 272 U.S. 652, 47 S.Ct. 221, 71 L.Ed. 460.

In response to a subpoena Cleary appeared before a grand jury and, after being warned of his rights, testified at length, deeply incriminating himself;

this testimony formed a substantial part of the evidence against him in that proceeding, which culminated in the indictment dismissed below. At the time he was subpoenaed appellee had already been arrested on the conspiracy charge for which he was later indicted. Judge Bryan held that, since charges were pending against Cleary when he appeared before the grand jury, his testimony was improperly received unless it could be found that at that time he had waived his privilege against self-incrimination under the Fifth Amendment to the United States Constitution with full knowledge of the protection the privilege afforded him. The court went on to find that, despite the warning appellee had received at the outset of his testimony, he had not fully understood these rights at that time; rather he was unfamiliar with court procedures and was nervous and mixed up, and he feared that the consequences of refusing to answer questions would be worse than those of an incriminating answer. Hence, the court concluded, Cleary did not by testifying knowingly waive his privilege against self-incrimination.[1]

 However apt the court's reasoning might be for the situation where an accused is called to testify at his own trial, United States v. Housing Foundation of America, 3 Cir., 176 F.2d 665; 18 U.S.C. § 3481, it must be noted that a grand jury investigation, though in a sense a criminal proceeding, Counselman v. Hitchcock, 142 U.S. 547, 12 S.Ct. 195, 35 L.Ed. 1110, is not closely analogous to a criminal trial. Because the grand jury merely accuses and the accused is protected from criminal punishment by all the safeguards of a trial, it has remained as free of court-made limitations and restrictions as it was in England at the time the Fifth Amendment was adopted.

---

* Sitting by designation pursuant to the provisions of 28 U.S.C. § 291(a).

1. Judge Bryan found it unnecessary to determine whether the mere calling of a person under charges to appear before a grand jury would invalidate a subsequent indictment; although seemingly critical of the course, he suggested that precedent or dicta permitted it, citing United States v. Scully, 2 Cir., 225 F.2d 113, certiorari denied 350 U.S. 897, 76 S.Ct. 156, 100 L. Ed. 788. See United States v. Wilson, 2 Cir., 264 F.2d 104.

United States v. Johnson, 319 U.S. 503, 510–512, 63 S.Ct. 1233, 87 L.Ed. 1546; Blair v. United States, 250 U.S. 273, 282, 39 S.Ct. 468, 63 L.Ed. 979; Hale v. Henkel, 201 U.S. 43, 26 S.Ct. 370, 50 L.Ed. 652. While it is constitutionally intended to provide a measure of restraint on unjust and ill founded accusations of crime, this protection had its origin in the honesty and fair-mindedness of the grand jurors themselves,[2] and today rests largely on the same foundation, rather than on any court-developed rules. In re Kittle, C.C.S.D.N.Y., 180 F. 946, 947; cf. Lawn v. United States, 355 U.S. 339, 349–350, 78 S.Ct. 311, 2 L.Ed. 2d 321; Costello v. United States, 350 U.S. 359, 362, 76 S.Ct. 406, 100 L.Ed. 397; United States v. Garnes, 2 Cir., 258 F.2d 530, 534.

■ Basically the grand jury is a law enforcement agency. Homan Mfg. Co. v. Russo, 7 Cir., 233 F.2d 547, 551; United States v. United States District Court for Southern Dist. of West Virginia, 4 Cir., 238 F.2d 713, 720, certiorari denied Valley Bell Dairy Co. v. United States, 352 U.S. 981, 77 S.Ct. 382, 1 L.Ed.2d 365; United States v. McGovern, 2 Cir., 60 F. 2d 880, 888–889, certiorari denied McGovern v. United States, 287 U.S. 650, 53 S.Ct. 96, 77 L.Ed. 561; United States v. Smyth, D.C.N.D.Cal., 104 F.Supp. 283, 289; In re Grand Jury Proceedings, D.C. E.D.Pa., 4 F.Supp. 283, 284; Charge to Grand Jury, C.C.W.Va., 30 Fed.Cas. 980, No. 18,248 (Cir. Justice Chase); Charge to Grand Jury, D.C.Or., 30 Fed. Cas. 986, No. 18,251 (Deady, J.); Yank-wich, Charge to Federal Grand Jury, 19 F.R.D. 117, 118; Kaufman, The Grand Jury—Its Role and Its Powers, 17 F.R.D. 331, 336. Under the Assize of Clarendon in 1166 and for several centuries thereafter the sole function of the accusatory jury in the area of criminal law was to assist the Crown in law enforcement. Edwards, The Grand Jury 27–28 (1906); 1 Pollock & Maitland, History of English Law 151–153, 201 (2d Ed. 1899), 2 id. 642.[3] And today, with its power to subpoena witnesses and question them in secret, the grand jury continues to be an important investigative instrument of the prosecutor. See Dession, From Indictment to Information—Implications of the Shift, 42 Yale L.J. 163, 189–192; Dession & Cohen, The Inquisitorial Functions of Grand Juries, 41 Yale L.J. 687, 697; Rep. of the Attorney General's National Committee To Study the Antitrust Laws 343–349 (1955).[4]

Neither federal agents nor prosecutors are broadly proscribed from questioning an accused in noncoercive situations. Indeed the federal courts have acknowledged the inevitability and the desirability of such interrogation. United States v. Wilson, 2 Cir., 264 F.2d 104. We do not understand that greater restrictions ever were imposed on the grand jury's inquiries. "It is a grand inquest, a body with powers of investigation and inquisition, the scope of whose inquiries is not to be limited narrowly by questions of propriety or forecasts of the probable result of the investigation, or

2. See The Trial of Stephen College, 8 How.St.Tr. 549; The Trial of the Earl of Shaftesbury, 8 How.St.Tr. 774; Somers, The Security of Englishmen's Lives, of the Trust, Power, and Duty of the Grand Juries of England (1681), written in a defense of the grand jury's refusal to indict Shaftesbury.

3. The first clause of that assize provided that "for the preservation of the peace and the maintenance of justice enquiries he made throughout each county and hundred by twelve legal men of the hundred and four legal men from each township, under oath to tell the truth; if in their hundred or their township there be

any man who is accused or generally suspected of being a robber or murderer or thief, or any man who is a receiver of robbers, murderers or thieves since our lord the king was king." 1 Holdsworth, A History of English Law 77 (7th Ed. 1956).

4. The legitimacy of the prosecutor's use of the grand jury to investigate crime is expressly recognized both by F.R.Crim.P., rule 6(e)—allowing the prosecutor to use transcripts of secret testimony in the performance of his duties—and by decisions, as, e. g., Application of Iaconi, D.C.Mass., 120 F.Supp. 589.

by doubts whether any particular individual will be found properly subject to an accusation of crime." Blair v. United States, 250 U.S. 273, 282, 39 S.Ct. 468, 471, 63 L.Ed. 979. Accordingly the question here is not so much whether Cleary, knowing his constitutional rights, consciously elected not to assert them, but "whether the testimony was freely given, all things considered." United States v. Block, 2 Cir., 88 F.2d 618, 621, certiorari denied Block v. United States, 301 U.S. 690, 57 S.Ct. 793, 81 L.Ed. 1347. See United States v. Klein, 2 Cir., 247 F.2d 908; Pulford v. United States, 6 Cir., 155 F.2d 944; United States v. Kimball, C.C.S.D.N.Y., 117 F. 156.

■■■ On the record before us we have no doubt that Cleary's testimony was completely voluntary. Appearing before a grand jury is not in itself an unduly coercive situation. In re Groban, 352 U.S. 330, 346–347, 77 S.Ct. 510, 1 L.Ed.2d 376 (dissenting opinion of Mr. Justice Black); cf. O'Connell v. United States, 2 Cir., 40 F.2d 201, 205, certiorari dismissed 296 U.S. 667, 51 S.Ct. 658, 75 L.Ed. 1472. And there are no additional facts here to indicate coercion. That he was nervous and confused during his testimony—a not unusual reaction of a witness—is not sufficient to render the testimony involuntary. The important factor is the lack of even the slightest suggestion that government officials applied any pressure or engaged in any form of misconduct which contributed to his testifying. Appellee had been previously questioned, once by a postal official and on several occasions by the Assistant United States Attorney handling the case. He was never mistreated in any manner on these occasions. When he was questioned by the Assistant United States Attorney and when he testified to the grand jury, he was advised that he need not answer incriminating questions. Though the court below has found that he did not understand his constitutional rights, he himself never raised any question to the prosecutor even on his interviews with the latter on each of the two days preceding his testimony and just before he went into the grand jury room. At no time did he give any indication of an unwillingness to testify. Indeed in the lengthy questioning at the prosecutor's office the day before his testimony he revealed substantially the same incriminating facts he told the grand jury. Actually he received not one but five explicit warnings—by the Postal Inspector on arrest, by the United States Commissioner on arraignment (these first two are questioned by defendant as not found below, but their occurrence seems to us clear), by the prosecutor on two different occasions of questioning, and finally before the grand jury itself. Under these circumstances we do not believe this last warning can be dismissed as merely "pro forma," but we regard it as the last and culminating step in several good faith attempts to apprise the witness of his rights.[5]

It is also to be noted that in holding these warnings inadequate under the circumstances, the district court obviously went beyond any standard which can be applied objectively and without discrimination to all persons having knowl-

---

5. We do not here decide whether it is necessary to give such a warning to a witness before a grand jury. In United States v. Scully, 2 Cir., 225 F.2d 113, certiorari denied 350 U.S. 897, 76 S.Ct. 156, 100 L.Ed. 788, the late Judge Frank held such a warning necessary where the witness was the subject of the grand jury's investigation and where charges were then pending against him. 225 F.2d 113, 116–120. Distinguishing such a witness from others appearing before a grand jury is perhaps doubtful on policy, see 67 Yale L.J. 1271 (1958); and on two oc-casions the Supreme Court has come close to holding that a warning is not constitutionally required for any witnesses. Wilson v. United States, 162 U.S. 613, 623, 624, 16 S.Ct. 895, 40 L.Ed. 1090; Powers v. United States, 223 U.S. 303, 313, 314, 32 S.Ct. 281, 56 L.Ed. 448. The precise holding of these cases—that a United States Commissioner need not give such a warning to defendants arraigned before him—has been changed by F.R.Crim.P., rule 5(b), though rule 6 on The Grand Jury has no similar requirement.

edge of crime, to set up a subjective test depending upon a particular person's state of mind. Such a test would make any examination at all highly precarious. Its difficulties are indicated here where the court found Cleary of limited intelligence, weak, and easily influenced, although at the same time "not lacking in a certain native shrewdness" and with "some education at the high school level." The requirement thus framed actually goes far beyond anything required of the English police under their highly developed quasi-judicial system renowned for its protection to the accused. For there, whenever the initially encouraged interrogation has gone to the point of producing an indication of guilt for which the witness should be charged, the witness must be given a caution, but one in precise and definite terms in general form like that developed by the prosecutor, very likely in recollection of the required English practice. See the lucid exposition of this practice by Mr. Justice Devlin, The Criminal Prosecution in England 31–41, 137, 138 (1958).[6] Thus the actual interrogation here measured up to standards of justice usually considered even higher than our own.

Our law endeavors to establish a fair balance between proper and useful police investigation and coercive attempts at surprise or forced confession. As we had occasion to point out in United States v. Wilson, supra, 2 Cir., 264 F.2d 104, it is not an evil thing for one accused of crime to aid the police in law enforcement by voluntarily admitting his guilt; and we are not disposed to elevate to the dignity of a constitutional right restrictions on ordinary investigation which in the present condition of society may be an unwarranted extravagance. We do not see that the circumstances under which ap-

pellee's indictment was procured reveal the slightest injustice to him or afford any basis for believing that he will not receive a fair trial in due course. Hence the indictment must be reinstated.

The thanks of the court are due assigned counsel, who has protected the rights of the appellee with ability and devotion.

Reversed and remanded.

---

6. Citing and quoting at p. 138 the historic objective formula of caution required by the Judges' Rules, concluding: "You are not obliged to say anything unless you wish to do so, but whatever you say will be taken down in writing and may be given in evidence." The only substantial difference in the prosecutor's warn- ings here was the limiting provision that the statement could be used "against you" in a criminal proceeding—a limitation held undesirable in the English procedure as tending to prevent statements by an innocent person to clear him of the charge. See Mr. Justice Devlin's explanation as cited in the text.