**UNITED STATES of America**

v.

**Louis PILNICK, Martin Fleishman, Julius Gladstein, Allan Harris, Rubin Ehrlich, Iris Helms and Golden Palm Acres, Inc., Defendants.**

**No. 66 Cr. 958.**

United States District Court
S. D. New York.

April 25, 1967.

794

Robert M. Morgenthau, U. S. Atty., for Southern District of New York, New York City, for United States of America; Lawrence W. Newman, Asst. U. S. Atty., of counsel.

Gilbert S. Rosenthal, New York City, for defendant Pilnick; William C. Herman, New York City, of counsel.

WEINFELD, District Judge.

The indictment charges Pilnick, five other individuals and one corporation with offenses arising out of the sale of undeveloped land in Florida to the public in 1965 and 1966. Count 1 charges all the defendants, and others not named as defendants, with conspiring to violate the mail and wire fraud statutes,[1] and counts 2 through 57 charge five of the individual defendants and the corporation with a scheme to defraud through the use of the mails.[2] Pilnick is named in all 57 counts.

Pilnick moves to dismiss the indictment on several distinct grounds, some relating to the indictment itself and others to the manner in which it was obtained. Each of the grounds will be considered separately.

1. 18 U.S.C. § 371.

2. 18 U.S.C. §§ 1341, 1343.

## MOTION TO DISMISS INDICTMENT

Pilnick first moves to dismiss on the grounds that the indictment is vague and fails to comply with Rule 7 (c) of the Federal Rules of Criminal Procedure. While the indictment is wordy and hardly a model pleading, as drawn it is sufficient to withstand this motion. Its sufficiency is not determined by whether it could have been more artfully drawn or made more definite and certain.[3] The conspiracy and the scheme charged are sufficiently set forth to apprise the defendant of the crimes charged so as to enable him to prepare his defense and to plead any judgment entered thereunder as a bar to further prosecution for the same offenses.[4] The omission of details of which defendant complains can be resolved by such bill of particulars to which he is entitled, as hereafter provided.[5]

The defendant next contends that certain counts of the indictment must be dismissed because, with respect to each, the items alleged to have been mailed "for the purpose of executing" a scheme to defraud would not have been mailed until after the defendants had received the money and the scheme was completed. Even were defendant's argument meritorious with respect to the counts charging the mailing of receipts and deeds, it fails with respect to those involving confirmations for, "the term 'confirma-

tion' is not a word of art. It has no fixed legal meaning nor does it give rise to fixed legal consequences. It may serve a variety of purposes. Merely because the mailings enumerated in these counts are designated as 'confirmations' does not indicate what function they served in the alleged transactions or at what stage in the transactions they were placed in the mails."[6]

Moreover, the defendant's argument as to the counts involving receipts and deeds is without merit. Neither Kann v. United States[7] nor Parr v. United States,[8] relied upon by defendant, held that the respective indictments failed to state offenses. They held, rather, that the evidence adduced at trial showed the mailing occurred after the scheme had reached fruition, and consequently, proof of an essential element was lacking. This is made abundantly clear in the recent case of United States v. Sampson,[9] where the Supreme Court reversed the dismissal of thirty-four counts of a mail fraud indictment, stating:

"We are unable to find anything in either the *Kann* or the *Parr* case which suggests that the Court was laying down an automatic rule that a deliberate, planned use of the mails after the victims' money had been obtained can never be 'for the purpose of executing' the defendants' scheme. Rather the Court found only that under the facts in those cases the schemes had been fully executed be-

---

3. United States v. Pope, 189 F.Supp. 12, 17 (S.D.N.Y.1960). See also United States v. Debrow, 346 U.S. 374, 376, 74 S.Ct. 113, 98 L.Ed. 92 (1953); Hagner v. United States, 285 U.S. 427, 52 S.Ct. 417, 76 L.Ed. 861 (1932); Clay v. United States, 326 F.2d 196 (10th Cir.), cert. denied, 372 U.S. 970, 83 S.Ct. 1095, 10 L.Ed.2d 132 (1963).

4. See Russell v. United States, 369 U.S. 749, 763–764, 82 S.Ct. 1038, 8 L.Ed.2d 240 (1962); United States v. Cruikshank, 92 U.S. 542, 557–559, 23 L.Ed. 588 (1875); United States v. Hoffa, 205 F. Supp. 710, 715–717 (S.D.Fla.), cert. denied sub nom. Hoffa v. Lieb, 371 U.S. 892, 83 S.Ct. 188, 9 L.Ed.2d 125 (1962).

5. See United States v. Brown, 335 F.2d 170, 172 (2d Cir. 1964); United States v. Ketchum, 320 F.2d 3, 8 (2d Cir.), cert. denied, 375 U.S. 905, 84 S.Ct. 194, 11 L.Ed.2d 145 (1963).

6. United States v. Greenberg, 30 F.R.D. 164, 167 (S.D.N.Y.1962).

7. 323 U.S. 88, 93–95, 65 S.Ct. 148, 89 L.Ed. 88 (1944).

8. 363 U.S. 370, 392–393, 80 S.Ct. 1171, 4 L.Ed.2d 1277 (1960).

9. 371 U.S. 75, 83 S.Ct. 173, 9 L.Ed.2d 136 (1962).

fore the mails were used. * * * [S]ubsequent mailings can in some circumstances provide the basis for an indictment under the mail fraud statutes." [10]

Here, as in Sampson, there has not yet been a trial. The proof at trial may establish the mailings of receipts and deeds were for the purpose of executing the alleged scheme.[11] If not, defendant may then move for a dismissal of the affected counts.

■ Defendant next urges dismissal of the conspiracy count upon the ground that it alleges two separate and distinct conspiracies.[12] The basis of this contention is that in addition to charging a conspiracy in a scheme "to defraud purchasers of tracts of land in Western Dade County, Florida," which allegedly was carried out through the Golden Palm Acres, Inc., a corporation dominated and controlled by Pilnick, the indictment further charges in certain subparagraphs that Pilnick caused the sale of certain portions of the land to codefendant Martin Fleishman, doing business under the trade name of Atlantic and Pacific Land Company, who resold the same to the persons to be defrauded; accordingly, defendant contends that two conspiracies are charged —the Golden Palm Acres, involving all the defendants, and the Atlantic and Pacific Land Company, involving only himself and Fleishman.

However, a fair reading of the indictment makes it clear that a single conspiracy is charged and that the resale of properties through the Fleishman trade name of Atlantic and Pacific Land

Company was in furtherance of its purposes. Thus, it is charged that Pilnick participated in setting up the Atlantic and Pacific Land Company and caused to be sold to Fleishman portions of the Western Dade County land for resale to those to be defrauded. The indictment sufficiently alleges Pilnick's involvement with Fleishman's operation in an alleged overall conspiracy which had a single purpose common to all co-conspirators.[13] Whether the government will sustain its allegation of a single conspiracy must await the trial.

■ Next, the defendant urges that dismissal of the indictment is compelled because of alleged violation of his rights under the Fifth and Sixth Amendments. The claim of self-incrimination and the denial of effective assistance of counsel, somewhat interwoven upon the defendant's presentation, rests upon the following circumstances: Pilnick, prior to the indictment, while the matter was under investigation, was requested to and did appear for an interview by an Assistant United States Attorney. He was accompanied by an attorney, who was present through the entire interview. Subsequently, this same attorney represented Norman Babat, who was later named in the indictment as a co-conspirator but not as a defendant, and also Julius Gladstein, named as a defendant only in the conspiracy charge. It is averred, and the government does not deny, that Babat and Gladstein had numerous conferences with the Assistant United States Attorney, and later testified before the grand jury. The defendant charges that "the actions of the

10. Id. at 80, 83 S.Ct. at 176.

11. See Friedman v. United States, 347 F. 2d 697, 710–711 (8th Cir.), cert. denied, 382 U.S. 946, 86 S.Ct. 407, 15 L.Ed.2d 354 (1965); Clark v. United States, 93 U.S. App.D.C. 61, 208 F.2d 840, cert. denied, 346 U.S. 865, 74 S.Ct. 105, 98 L.Ed. 376 (1953).

12. See Kotteakos v. United States, 328 U. S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946).

13. See Blumenthal v. United States, 332 U.S. 539, 557–559, 68 S.Ct. 248, 92 L.Ed. 154 (1947); Friedman v. United States, 347 F.2d 697, 708 (8th Cir.), cert. denied, 382 U.S. 946, 86 S.Ct. 407, 15 L.Ed.2d 354 (1965); United States v. New York Great A & P Tea Co., 137 F.2d 459, 463 (5th Cir.), cert. denied, 320 U.S. 783, 64 S.Ct. 191, 88 L.Ed. 471 (1943); United States v. Bruno, 105 F.2d 921, 922–923 (2d Cir.), rev'd on other grounds, 308 U.S. 287, 60 S.Ct. 198, 84 L.Ed. 257 (1939).

office of the United States Attorney in permitting without question a lawyer having such an obvious conflict of interest to represent persons other than Pilnick and to sit in and be present at conferences, discussions and interviews, was highly improper and did violate the rights of the defendant Pilnick under the Fifth and Sixth Amendments * * * and did in fact reduce to a minimum of zero his representation by counsel in his prior interview with the authorities." This broad charge of infringement of the constitutional rights and unethical conduct attributed to the Assistant United States Attorney and defendant's former attorney dissolves upon recital of the facts.

The former attorney has filed an affidavit which is unchallenged. It appears that he conferred with Pilnick for about one-half hour prior to his appearance before the Assistant United States Attorney; that thereafter at the interview at which the attorney was present Pilnick repeated everything he had previously told the attorney. Up to this point there is no basis for any claim of adverse interest, since the attorney did not then represent Gladstein or Babat, or that at this single conference the attorney's representation was anything but adequate and professional.[14]

The former attorney swears he never told anyone what Pilnick had told him in their sole conference preceding the interview, and that thereafter he had no further conversation with Pilnick. The Assistant United States Attorney swears he was told nothing by the former attorney concerning what Pilnick had told him, and further that no one else told him anything which could be attributed to the former attorney's disclosure of Pilnick's confidence.

Despite these unchallenged and unequivocal statements that there was no impairment of the confidential relationship, the defendant presses that when thereafter the former attorney undertook to represent Babat and Gladstein, he "must have" revealed Pilnick's confidences to those other clients; that when Babat and Gladstein appeared before the grand jury, his right to the effective aid of counsel and against self-incrimination was infringed by the government's knowing use of them as witnesses, since they were being advised by "an attorney who was privy to the secrets and confidences of Pilnick." Bluntly put, the charge is made that the attorney revealed to Babat and Gladstein what Pilnick had told him.

To support this charge and to overcome the categorical denials by both the former attorney and the Assistant United States Attorney, the defendant offers no proof; instead, he relies upon a line of civil cases which hold that on applications to disqualify lawyers from shifting sides and representing litigants in matters adversely relating to former clients' interests and involving the same subject matter of the original litigation, the court will presume that confidences were disclosed by the previous client.[15] The cases are entirely inapposite. They simply hold that no inquiry will be made as to what the former client told the attorney in order to avoid disclosure of the very matters intended to be protected by the privilege. The presumption is that the client revealed to the attorney confidential matters relating to the subject of representation.

No such presumption is required here since it is not disputed that Pilnick made such disclosure. The cases, however, do not hold, as defendant here necessar-

14. See United States v. Garguilo, 324 F.2d 795, 796–797 (2d Cir. 1963); United States v. Gonzalez, 321 F.2d 638 (2d Cir. 1963); United States v. O'Donnell, 260 F.2d 232 (7th Cir. 1958); United States v. Stern, 123 F.Supp. 118, 122–123 (D. Md.1954), aff'd, 219 F.2d 263 (4th Cir. 1955).

15. Marco v. Dulles, 169 F.Supp. 622, 629–630 (S.D.N.Y.), appeal dismissed, 268 F. 2d 192 (2d Cir. 1959); T. C. Theatre Corp. v. Warner Bros., 113 F.Supp. 265, 268–269 (S.D.N.Y.1953).

ily contends, that a further presumption is indulged in that the lawyer subsequently breached the relationship and revealed the confidences. But even of more significance, Pilnick's statements no longer were protected by the lawyer-client privilege, since it is not disputed that when he was interviewed by the Assistant United States Attorney he repeated everything he had previously told his lawyer. Any privilege, whether self-incrimination or attorney-client, that Pilnick might have had with respect to information disclosed to his former attorney was destroyed when he gave this same information to the Assistant at the interview.[16]

Finally, not only was there no "switching" of sides here, but also it does not appear that Pilnick's interests and those of Babat and Gladstein were antagonistic. Parenthetically, it should be noted that it is not uncommon for a principal defendant, such as Pilnick, to enlist in his own interest the services of his lawyer on behalf of other persons involved in the same alleged crime. To uphold the defendant's position on the facts here presented would permit an easy and convenient means of aborting an indictment. The claim here asserted, even if of constitutional dimensions, is without merit.

The defendant makes a further contention that his privilege against self-incrimination was violated when he was subpoenaed to testify before the grand jury after a complaint had been filed and he had been arrested, and after the Assistant United States Attorney had been advised, in advance of his scheduled appearance, that he would assert his privilege before the grand jury.

The argument is two-pronged: (1) that as a prime target of the investigation and a potential defendant he was not subject to grand jury questioning, and (2) that since the United States Attorney had been advised the defendant would assert the privilege, to require him to do so before the grand jury constituted compelled demeanor evidence which prejudiced him before the grand jury and necessarily influenced it in voting a true bill.

These contentions are without validity. The fact that a witness is a potential defendant does not immunize him from being called upon to testify before a grand jury.[17] Neither does the fact that the witness has been arrested in a matter which is the subject of the grand jury inquiry gain for him automatic immunity from grand jury process.[18] As to the further contention that because his lawyer gave advance notice that he intended to assert his privilege against self-incrimination, he was excused from appearing before the grand jury, sufficient answer is this court's observation on a related issue:

"To uphold the defendant's plea in advance of the taking of his testimony upon the mere filing of his affidavit asserting the privilege would take from the Court the determination of the basic issue of whether or not an answer in response to specific questions would incriminate the defendant

16. See Himmelfarb v. United States, 175 F.2d 924, 938–939 (9th Cir.), cert. denied, 338 U.S. 860, 70 S.Ct. 103, 94 L.Ed. 527 (1949); Green v. Crapo, 181 Mass. 55, 62 N.E. 956, 959 (1902) (Holmes, J.). ("The privacy for the sake of which the privilege was created was gone by the appellant's own consent, and the privilege does not remain under such circumstances for the mere sake of giving the client an additional weapon to use or not at his choice.")

17. United States v. Irwin, 354 F.2d 192, 198–199 (2d Cir. 1965), cert. denied, 383 U.S. 967, 86 S.Ct. 1272, 16 L.Ed.2d 308 (1966); United States v. Rosen, 353 F. 2d 523 (2d Cir. 1965), cert. denied, 383 U.S. 908, 86 S.Ct. 889, 15 L.Ed.2d 663 (1966); United States v. Winter, 348 F. 2d 204, 207 (2d Cir.), cert. denied, 382 U. S. 955, 86 S.Ct. 429, 15 L.Ed.2d 360 (1965); United States v. Cleary, 265 F. 2d 459 (2d Cir.), cert. denied, 360 U.S. 936, 79 S.Ct. 1458, 3 L.Ed.2d 1548 (1959).

18. See United States v. Cleary, 265 F.2d 459 (2d Cir.), cert. denied, 360 U.S. 936, 79 S.Ct. 1458, 3 L.Ed.2d 1548 (1959). See also United States v. Cefalu, 338 F. 2d 582, 584 (7th Cir. 1964).

or subject him to real danger and leave its determination entirely to the defendant. This is not the law."[19]

■ The doctrine asserted by the defendant would serve as a handy vehicle automatically to render sterile grand jury subpoenaes and to deprive the government of its right to the testimony of witnesses—a right subject only to constitutional limitations and not to the unilateral judgment of the witness.

■ Finally, the claim of the defendant that he was prejudiced in the eyes of the grand jury, which in consequence was influenced to return an indictment because of the assertion of his constitutional right, equally is without foundation. No implication of guilt was permissible because he invoked his Fifth Amendment privilege before the grand jury.[20]

## MOTION FOR CHANGE OF VENUE

■ Defendant Pilnick moves for a transfer of venue to the Southern District of Florida pursuant to Rule 21(a), which provides for such transfer if "there exists in the district where the prosecution is pending so great a prejudice against the defendant that he cannot obtain a fair and impartial trial." The defendant's claim of prejudice is that the acts of the United States Attorney's office evince a vendetta-like prejudice against him—a view probably entertained by most defendants of their prosecutors; further, he contends that any petit jury outside Florida

will necessarily be prejudiced by not understanding that easements in Florida are commonplace and do not reflect upon the character of the land. These contentions are patently frivolous. The prejudice referred to in the Rule is that which would foreclose a fair and impartial trial before a court and jury. No such hostile atmosphere is asserted. Apart from the fact that the charge of prosecution hostility is without support, the personal attitude of the prosecution toward the defendant has no bearing on the issue.[21] Insofar as defendant's argument relating to Florida easements has any validity, it relates not to jury prejudice but to alleged lack of knowledge; he may offer evidence to a jury in this district as to the nature of such easements.

■ The defendant also moves under Rule 21(b), which permits transfer "for the convenience of parties and witnesses, and in the interest of justice" for the transfer of the prosecution either to Florida or New Jersey. A transfer will not be granted "unless the factors involved indicate a balance of inconvenience of some substance to the defendant."[22] Florida is claimed to be a more appropriate forum because Pilnick resides there, the land involved is located there, and Pilnick intends to call expert witnesses upon the trial to testify concerning the nature of the land. Alternatively, New Jersey is claimed as a more appropriate forum because the offices of defendant Golden Palm Acres, Inc. were located there, and most of

19. United States v. Lustig, 16 F.R.D. 138, 139–140 (S.D.N.Y.1954). See also Namet v. United States, 373 U.S. 179, 83 S.Ct. 1151, 10 L.Ed.2d 278 (1963); United States v. Irwin, 354 F.2d 192, 199 (2d Cir. 1965), cert. denied, 383 U.S. 967, 86 S.Ct. 1272, 16 L.Ed.2d 308 (1966); United States v. Winter, 348 F.2d 204 (2d Cir.), cert. denied, 382 U.S. 955, 86 S.Ct. 429, 15 L.Ed.2d 360 (1965); United States v. Cleary, 265 F.2d 459 (2d Cir.), cert. denied, 360 U.S. 936, 79 S.Ct. 1458, 3 L.Ed.2d 1548 (1959); Enrichi v. United States, 212 F.2d 702 (10th Cir. 1954); United States v. Leighton, 265 F.Supp. 27 (S.D.N.Y.1967); Untied States ex rel.

Laino v. Warden, 246 F.Supp. 72 (S.D.N.Y.1965), aff'd per curiam, 355 F.2d 208 (2d Cir. 1966).

20. See Grunewald v. United States, 353 U.S. 391, 421, 77 S.Ct. 963, 1 L.Ed.2d 931 (1957); United States v. Tomaiolo, 249 F.2d 683, 690–691 (2d Cir. 1957).

21. Cf. Wood v. United States, 357 F.2d 425, 427 (10th Cir.), cert. denied, 385 U.S. 866, 87 S.Ct. 129, 17 L.Ed.2d 94 (1966).

22. United States v. Cohen, 35 F.R.D. 227, 232 (N.D.Cal.1964).

the acts complained of would have occurred there. Three of the defendants and one co-conspirator live in New Jersey, but within close and easy travel distance to New York. One defendant and five co-conspirators live in this district; another co-conspirator lives on Long Island. None of the persons who allegedly received mailings, as alleged in the substantive counts of the indictment, resides in New Jersey or Florida; many of them reside in New York. Under all the circumstances, not only has defendant not carried his burden of proof that convenience and justice would be best served by transferring this action, but it appears that this district is the most appropriate for the trial of this matter.

## MOTION FOR SEVERANCE

Defendant next moves for a severance under Rule 14 of the Federal Rules of Criminal Procedure. His motion rests upon three grounds: (1) it would be contrary to the interests of justice, for reasons previously discussed, to try him together with defendant Fleishman;[23] (2) he intends to call as witnesses various codefendants who may assert their constitutional privileges not to testify; and (3) any admissions and confessions of codefendants introduced at trial would irreparably prejudice him.

As previously discussed, since the indictment charges a single conspiracy, defendant's "two-conspiracy" argument with respect to Fleishman is premature, and his motion for severance upon this ground may be renewed, if appropriate, upon the trial.

His second argument is predicated upon a problem which may never arise, and in any event, as he concedes, any codefendant may assert his privilege if called to testify at a subsequent trial of defendant alone. Indeed, even if there were a severance and the codefendants were tried before this defendant, the codefendants could still assert their constitutional privilege, since they might be subject to prosecution under state or other federal laws for actions in or integrally connected with this case.[24]

Defendant's final argument is that United States v. Bozza[25] indicates that the heretofore leading case of Delli Paoli v. United States[26] has been effectively overruled by Jackson v. Denno.[27] Acceptance of defendant's argument would mean that whenever the admissions of one codefendant will be used against him at trial, the court must automatically grant severance upon the motion of another codefendant likely to be implicated by such admissions. This is not the holding of *Bozza*. Rather, the holding is "that there is a point where credulity as to the efficacy of such [limiting] instructions with respect to a confession implicating co-defendants is overstrained, and that this point was reached here."[28]

It is clear from both Delli Paoli and Bozza that the necessity for a severance cannot be determined at this stage of the prosecution. If the government does offer any statements of codefendants, the court may then assess the applicabil-

---

23. Defendant also urges his trial together with Gladstein would, for reasons previously discussed, prejudice him. This aspect of his motion has, however, become moot, since Gladstein pleaded guilty to the count naming him.

24. See Murphy v. Waterfront Comm'n, 378 U.S. 52, 79, 84 S.Ct. 1594, 12 L.Ed.2d 678 (1964); Hoffman v. United States, 341 U.S. 479, 486–488, 71 S.Ct. 814, 95 L.Ed. 1118 (1951); Bowman v. United States, 350 F.2d 913, 914–915 (9th Cir. 1965), cert. denied, 383 U.S. 950, 86 S.Ct. 1209, 17 L.Ed.2d 212 (1966).

25. 365 F.2d 206 (2d Cir. 1966).

26. 352 U.S. 232, 77 S.Ct. 294, 1 L.Ed.2d 278 (1957).

27. 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964). This contention is of doubtful validity in the light of the recently decided Spencer v. State of Texas, 385 U.S. 554, 87 S.Ct. 648, 17 L.Ed.2d 606 (1967). See also United States v. Jones, 374 F.2d 414 (2d Cir. 1967).

28. 365 F.2d 206, 217 (2d Cir. 1966).

ity of Delli Paoli,[29] and if necessary protect Pilnick, either by excision of material from offered admissions of co-defendants, severance or exclusion of evidence.[30]  And, of course, the government may decide not to offer admissions of a codefendant.  These are matters to be reserved for the trial.

## MOTION FOR DISCOVERY AND INSPECTION

■  The defendant's motion for discovery and inspection is granted to the extent that the government shall produce for inspection and copying:

(1) all statements made by Pilnick. If such statements have not been reduced to writing or are not in recorded form, then any handwritten notes relating to such statements;

(2) all books of account which are within its possession and which it intends to offer in evidence upon the trial;

(3) the recorded testimony of defendant Pilnick before the grand jury.

The government states that it has no results of reports of scientific tests or experiments made in connection with this case; accordingly, this and all remaining aspects of defendant's motion under Rule 16 are denied.

## MOTION FOR BILL OF PARTICULARS

The motion for a bill of particulars is granted to the extent that the government shall set forth:

■  (1) the names of all co-conspirators presently known to the government and their addresses at the time of their alleged participation in the alleged conspiracy;

■  (2) any overt acts not enumerated in the indictment, concerning which acts the government intends to offer evidence upon the trial of the indictment herein;

■  (3) a legal description of the plots of real estate which were the subject of the mailings referred to in counts 2 through 57;

■  (4) if it intends upon the trial to offer evidence of false and fraudulent pretenses, representations and promises not included in paragraph 3(m) of count 1, set forth the substance thereof;

■  (5) to the extent known to it, the true names of the salesmen who, as alleged in paragraph 3(g) of count 1, concealed their true names;

■  (6) the legal description of any real property it will be claimed, as alleged in paragraph 3(j) of count 1, that the defendant Pilnick caused to be sold to the defendant Martin Fleishman;

■  (7) from where and to where and whom it will be claimed Norman Babat made telephone calls in November and December 1965 and April 24, 1966, as alleged in overt acts 1, 2 and 5;

(8) from where and to where and whom it will be claimed Julius Gladstein made telephone calls in December 1965, as alleged in overt act 3;

■  (9) the name and address of the customer and the place where it is alleged Allan Harris "had a meeting with a customer," as alleged in overt act 4;

■  (10) a copy or reproduction of each and every matter and thing named in counts 2 through 57 of the indictment, including any and all envelopes in which it is claimed such matter was mailed or received;

■  (11) the names and last known addresses of persons from whom mail matter was sent addressed to Golden Palm Acres, Inc. or Atlantic and Pacific Land Co., in counts 7, 11, 13, 15, 16, 17, 19, 21, 22, 24, 25, 30, 33, 43, 55 and 56.

In all other respects the motion is denied.

**29.**  Compare United States v. Bozza, 365 F. 2d 206 (2d Cir. 1966), with United States v. Lovejoy, 364 F.2d 586 (2d Cir. 1966).

**30.**  See United States v. Kahaner, 203 F. Supp. 78, 82-83 (S.D.N.Y.1962).

## MOTION TO STRIKE SURPLUSAGE

The defendant's motion under Rule 7(d) of the Federal Rules of Criminal Procedure to strike certain language from the indictment as surplusage is denied. The included matter may be relevant to the conspiracy charge; in any event, there is no basis to the claim that its inclusion is prejudicial or inflammatory.[31]

The defendant's final motion to extend his time to make additional motions after the government has complied with the discovery and inspection order entered herein is denied. As the above discussion indicates, the defendant's counsel has made a series of extended motions which have covered all areas of pretrial inquiry. To grant this motion would only serve to delay the trial.

---

31. United States v. Chas. Pfizer & Co., 217 F.Supp. 199, 201 (S.D.N.Y.1963); United States v. Klein, 124 F.Supp. 476, 479–480 (S.D.N.Y.1954).